BRESCOLL, APPELLEE, *v.* NATIONWIDE MUTUAL INSURANCE CO., APPELLANT.

(No. 5438—Decided June 26, 1961.)

*Mr. John Huffer,* for appellee.
*Messrs. Marshall, Melhorn, Block & Belt,* for appellant.

Fess, J. This is an appeal on questions of law from a judgment in the sum of $1,419 entered on behalf of the plaintiff against the defendant by the court without the intervention of a jury. The cause came on for hearing on the pleadings, agreed statement of facts, stipulations and exhibits.

The action was brought by the plaintiff against the defendant upon a certain policy of automobile insurance covering plaintiff's fiancee, Lenore M. Anderson, as the named insured, pursuant to which the defendant contracted to provide, among other coverages, for payment of all reasonable expenses for medical and hospital care incurred by the named insured, as well as by any person driving the vehicle described in the policy, or another vehicle as a replacement thereof, with the consent of such named insured. The pertinent portions of the stipulation of agreed facts are as follows:

"1. That the allegations and averments of the petition set out in paragraphs one (1), two (2), four (4), five (5) and seven (7) are agreed and stipulated to be true and are admitted, with the exception that no conclusion or inference as to the applicability of the insurance coverage provided in the policy of in-

surance described therein as it inures to the benefit of the plaintiff is to be deemed admitted. All conditions to said contract except for provisions as to notice have been performed by plaintiff. Defendant was notified of the facts herein stipulated on December 24, 1958.

"2. That on December 16, 1958, Lenore Anderson was the named insured under a policy of automobile insurance which policy is marked 'Plaintiff's Exhibit A' and is offered and received in evidence by agreement of the parties and is admitted to contain all of the terms and provisions pertinent to the contract of insurance between the defendant and the policyholder, Lenore Anderson.

"3. That on December 16, 1958, Lenore Anderson was the titled owner of the 1953 Ford automobile described in the foregoing policy of insurance, having purchased same in September of 1956, and was the titled owner of the 1953 Lincoln which was involved in the subject accident, having purchased same on September 18, 1958.

"4. That on December 16, 1958, the plaintiff, Ralph Brescoll, was driving the 1953 Lincoln, with the express permission of Lenore Anderson, when he was involved in the accident in which the injuries giving rise to this suit were suffered.

"5. That prior to the purchase of the 1953 Lincoln at or around March 12, 1958, the 1953 Ford was involved in a collision resulting in damage to the body of said automobile and shortly thereafter developed transmission trouble, making it possible to operate the automobile only in second and third gears, although said automobile was continued in service by the policyholder until some time early in September of 1958.

"6. That some time early in September, prior to September 18, 1958, the 1953 Ford was taken to Jordanoff Auto Sales where the plaintiff, then the fiance of the policyholder, undertook repairs on said automobile in his off hours as salesman for Jordanoff Auto Sales, in an effort to repair the automobile for sale.

"7. That the repairs undertaken at Jordanoff Auto Sales were made by the plaintiff and his employer over a course of approximately one month, during all of which time the 1953 Ford was out of service entirely.

"8. That during this period of time while the 1953 Ford

was out of service for these repairs, the 1953 Lincoln was purchased by the policyholder, to wit: on September 18, 1958, with the intention of disposing of the 1953 Ford by the sale of same as soon as repairs made sale possible.

"9. That when the repairs to the 1953 Ford were completed in the latter part of October, 1958, the car was delivered to Walker Motor Sales in operative condition to the custody of the plaintiff who at this time was working as a salesman at Walker Motor Sales.

"10. That the plaintiff, after its delivery to him, took the 1953 Ford to Earl Shieb's paint shop at Detroit Avenue and Monroe Street for a paint job and several days later placed the car on the lot at Walker Motor Sales for sale.

"11. That efforts to sell the car were unavailing at the Walker Motor Sales lot and some time later, in December of 1958, several days before the subject accident of December 16, 1958, plaintiff removed the automobile from the used car lot to the residence of the policyholder, Lenore Anderson, and an ad was placed in the Toledo Blade by the policyholder in an effort to sell the automobile from the policyholder's home.

"12. That at the time of the purchase of the 1953 Lincoln and up until after December 16, 1958, the license plates from the 1953 Ford had not been transferred to the 1953 Lincoln; that plaintiff will offer to prove that the license plates were physically transferred onto the 1953 Lincoln on or about September 18, 1958, and remained on this car continuously until the time of the subject accident on December 16, 1958, to which defendant objects on the ground that the title to the automobile controls and that plaintiff is estopped to assert this evidence.

"13. That from the time of the purchase of the 1953 Lincoln until the date of the accident, the 1953 Lincoln was regularly and continuously used by the policyholder and the 1953 Ford was used only to transport same to and from the dealer's or in demonstrations of same.

"14. Defendant was not notified of the purchase or use of the 1953 Lincoln by the policyholder until subsequent to December 16, 1958, nor was it advised of any of the events with respect to said 1953 Ford."

Defendant contends, first, that it is relieved of liability by reason of the fact that it did not receive notice of the purchase

by Anderson of the Lincoln automobile until after the accident on December 16, 1958. Without discussing in detail the terms of the policy, it is our conclusion that, although notice was required as a prerequisite to establishing liability of the company under coverages A (comprehensive) and B (collision), no such notice was required with respect to the so-called family compensation coverage of the policy.

With respect to coverage undertaken pursuant to the family compensation provision, the policy provides extended coverage, under Title VI—Use of other Land Motor Vehicles—to:

"(c) any other person or organization using a land motor vehicle as a replacement for the described automobile if such use is with the permission of the policyholder or spouse."

The questions to be determined in this appeal, therefore, are the proper construction of the word "replacement," as used in the policy, and whether the 1953 Lincoln purchased by the named insured replaced her 1953 Ford, thereby according coverage of the plaintiff, who was driving the Lincoln with the express permission of the named insured.

In Ohio the rule is well established that words used in an insurance policy are to be given their natural and usual meaning, unless otherwise defined in the policy. *Garlick, Admr.,* v. *McFarland,* 159 Ohio St., 539, 545.

In the absence of evidence that the word "replacement" has a meaning peculiar to the insurance field, or that the parties intended any different meaning in an automobile liability policy, the ordinary meaning of the term, that is, a substitute or equivalent in place of the person or thing, governs. *Nationwide Mutual Ins. Co.* v. *Mast* (Del. Sup., 1959), 153 A. (2d), 893. And the test to be applied in construing the·language of an insurance policy is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would have understood them to mean. *Merchants Mutual Casualty Co.* v. *Lambert* (1940), 90 N. H., 507, 11 A. (2d), 361, 127 A. L. R., 483, and annotation.

"Replace" means to take the place of. *Royer* v. *Shawnee Mutual Ins. Co.* (1950), 62 Ohio Law Abs., 145. See, also, *Nationwide Mutual Ins. Co.* v. *Mast, supra.*

Ordinarily, no question arises with.respect to coverage upon a newly-acquired automobile, because usually possession

of the automobile described in the policy is transferred to the dealer concurrent with the delivery of the second car to the named insured. Thus, the newly-acquired automobile actually replaces the car described in the policy.

In the instant case, the Ford car was out of service from September 18th to the time of completion of its repair in the latter part of October. After its repair, the Ford was used only for transportation incident to its sale. From date of its purchase, the Lincoln, instead of the Ford, was regularly and continuously used by the insured. In our opinion, to all intents and purposes, the Lincoln thus replaced the Ford.

In support of its contention that the Lincoln automobile did not replace the Ford automobile, defendant relies upon the first paragraph of the headnotes in *Mitcham* v. *Travelers Indemnity Co.* (C. C. A. 4, 1942), 127 F. (2d), 27, stating:

"Where insured did not trade in his old automobile on purchase price of new one, but left old automobile with dealer for storage and sale, and did not transfer title thereto, the new automobile did not 'replace' the old one, and therefore was not within protection of automobile liability policy which covered old automobile and provided for automatic insurance on any newly acquired automobile which might replace automobile described in policy."

However, that decision turned primarily upon the failure of the insured to give notice of the acquisition of the second automobile within ten days following the date of its delivery, as specifically required by the terms of the policy involved in that case. Furthermore, as pointed out by the Superior Court of Delaware in *Nationwide Mutual Ins. Co.* v. *Mast, supra,* in the *Mitcham* case the second car was bought as an additional vehicle, and with a trade-in of a relative's car, and could not be considered a replacement for the original insured car. See, also, *Maryland Indemnity & Fire Ins. Exchange* v. *Steers* (1960), 221 Md., 380, 157 A. (2d), 803, distinguishing the *Mitcham* case.

Where the insured first bought an Oldsmobile to replace his Packard under the policy, without notifying the insurer of such change, and subsequently acquired a Pontiac to replace the Oldsmobile, notifying the insurer of the acquisition within

thirty days of the delivery of the Pontiac, it was held that the Pontiac was a replacement of the Packard within the meaning of the insurance clause, notwithstanding the insured's intervening ownership of the Oldsmobile. *Kaczmarck* v. *LaPerriere,* 337 Mich., 500, 60 N. W. (2d), 327; Annotation, 34 A. L. R. (2d), 936, 946.

The fact that the Ford car was retained by the named insured and was driveable for some six weeks prior to the accident does not preclude the transfer of coverage to the Lincoln car, since the Lincoln was actually purchased to replace the Ford for the same use. *Merchants Mutual Casualty Co.* v. *Lambert, supra* (90 N. H., 507); *Royer* v. *Shawnee Mutual Ins. Co., supra* (62 Ohio Law Abs., 145). Contra (but distinguishable upon the facts), *Mitcham* v. *Travelers Indemnity Co., supra; State Farm Mutual Auto. Ins. Co.* v. *Shaffer* (1959), 250 N. C., 45, 108 S. E. (2d), 49. Cf. 5A American Jurisprudence, 83, Section 85; Annotation, 127 A. L. R., 486; 34 A. L. R. (2d), 936, 945.

With regard to defendant's objection to proof that the insured illegally transferred her license places from the Ford to the Lincoln, such evidence is more or less immaterial, but would tend to show that the insured intended to drive the Lincoln in place of the Ford.

Finally, upon an appeal taken from a judgment entered by the court upon the evidence or agreed statement of facts, without the intervention of a jury, any fact necessary to sustain the judgment will be presumed to have been found by the trial court if the evidence can be found in support of such finding. *Crawford* v. *Bach* (1950), 60 Ohio Law Abs., 179; *Gibsonburg Banking Co.* v. *Wakeman Banking Co.,* 20 C. C., 591, 10 C. D., 754. Or, in other words, where a trial court hears and determines a case without the intervention of a jury and does not make separate conclusions of fact and law, and any evidence is produced to support the conclusions reached under proper rules of law applicable thereto, a reviewing court will presume that the proper rules of law were applied. *Scovenner* v. *Toelke,* 119 Ohio St., 256. The same principle of law has been applied in other jurisdictions in automobile insurance cases involving coverage under a replacement clause. *State Farm Mutual Auto.*

*Ins. Co.* v. *Shaffer, supra* (250 N. C., 45); *Maryland Indemnity & Fire Ins. Exchange* v. *Steers, supra* (221 Md., 380).

The judgment of the Court of Common Pleas is affirmed and the cause is remanded thereto for execution.

*Judgment affirmed.*

SMITH and DEEDS, JJ., concur.