NATIONAL INDEMNITY COMPANY,
Plaintiff,

v.

Gary AANENSON, Edward Piotrowski, a
minor, by this father and natural guard-
ian, Michael Piotrowski, Michael Pio-
trowski and Mark Fulton, Defendants.

Civ. No. 4–65–391.

United States District Court
D. Minnesota,
Fourth Division.

Feb. 18, 1967.

Schermer & Gensler, by Irvin E. Scher-
mer, Minneapolis, Minn., for plaintiff.

Dudley, Smith, Copeland & O'Connor,
by Wayne Belisle, St. Paul, Minn., for
defendant, Gary Aanenson.

Charles Rubenstein, Minneapolis,
Minn., for defendants, Edward and
Michael Piotrowski.

John A. McEachron, Jr., Minneapolis,
Minn., for defendant, Mark Fulton.

## MEMORANDUM DECISION

MILES W. LORD, District Judge.

This is an action for a declaratory judgment pursuant to the Federal Declaratory Judgment Act wherein the plaintiff insurer seeks a determination whether an owner's policy of automobile insurance issued by it to defendant Gary Aanenson provided coverage for an accident wnich occurred while he was operating a 1958 Pontiac automobile not described in the policy. All of the persons involved in the accident have been joined as party defendants. The only vehicle described in the policy was a 1960 Cadillac automobile. It is the contention of the defendants that the Pontiac was a "replacement" for the Cadillac and qualified for coverage under the automatic coverage feature of the policy This contention is denied by the plaintiff.

Plaintiff National Indemnity Company is an insurance company organized under the laws of the State of Nebraska, and has its home office in said state. All of the defendants herein are residents of the State of Minnesota and are citizens thereof. The amount in controversy between the parties is in excess of the sum of Ten Thousand Dollars ($10,000.-00), exclusive of interest and costs. An actual controversy of a justiciable nature exists between the plaintiff and the several defendants involving their rights and liabilities as respects coverage afforded the defendant Gary Aanenson under a policy of automobile liability insurance issued to defendant Gary Aanenson.

Gary Aanenson originally applied to the plaintiff insurer in September, 1964, for coverage for a 1961 Chevrolet Impala for the period September 16, 1964, to September 16, 1965. His application indicated that he was the sole owner of the Chevrolet Impala. As a condition to the retention of his driver's license, Aanenson was required to file with the Minnesota Highway Commissioner a certification by an insurer that a "motor vehicle liability policy" was in effect for his benefit[1] in the form of either an owner's policy or an operator's policy.[2] Contemporaneously with the issuance of the policy the insurer filed its SR–22 certificate with the Commissioner showing the issuance of an owner's policy covering the Chevrolet. On August 2, 1965, the insurer was requested to amend the policy so as to substitute a 1960 Cadillac for the Chevrolet. The insurer did so, and likewise amended its SR–22 certificate so as to show the 1960 Cadillac in place of the 1961 Chevrolet as the described vehicle in the owner's policy. When the time for renewal of the policy arrived, the insurer was requested to renew the policy and was advised that the 1960 Cadillac shown on the policy was the vehicle to be covered. The insurer accordingly issued its renewal owner's policy to Aanenson for the period September 17, 1965, to September 17, 1966, covering the 1960 Cadillac as the described vehicle. It also advised the Highway Commissioner by telegram of the fact that a policy had been issued to Aanenson and contemporaneously filed with the Commissioner its SR–22 certificate certifying that an owner's policy of insurance was in effect for Aanenson covering the 1960 Cadillac as the described vehicle.[3]

The 1960 Cadillac automobile described in the policy of insurance was owned by Gary Aanenson's father and registered in his mother's name. It had been furnished to Gary Aanenson for his personal use. It was still owned by the Aanenson family and in operable condition at the time of the accident. There

1. Minn.Stat. § 170.38, subd. 1.

2. Minn.Stat. § 170.40.

3. Defendant argues that certification of a policy to comply with the Financial Responsibility Act avoids any limitations of coverage expressed in the policy. However, the Minnesota Supreme Court has indicated that it would reject such an argument in a case, like the instant case, involving a suit between the insurer and the insured in which the injured persons are merely nominal parties. See Gabrelcik v. National Indemnity Co., 269 Minn. 445, 448, n. 7, 131 N.W.2d 534, 536 n. 7 (1964).

**410**

is no evidence that Gary Aanenson's permission to use the 1960 Cadillac was ever withdrawn. Nor is there any showing that Gary Aanenson ever told his parents that he would not be using the 1960 Cadillac. At all relevant times the Aanenson family had more automobiles than drivers.

In September, 1965, Gary Aanenson purchased a 1958 Pontiac automobile from Community Credit Company for $150. He paid $75 on September 15, 1965, and the balance on September 17, 1965, at which time the car was released to him. The 1958 Pontiac was owned by Gary Aanenson and registered in his name. Gary Aanenson concealed his acquisition of the 1958 Pontiac from his parents. One week after its acquisition, Gary Aanenson departed from home to commence the fall quarter of school at St. Cloud State College. He took the 1958 Pontiac with him. It was not until Gary Aanenson dropped out of school and returned home on or about October 12, 1965, that his parents discovered that he had purchased the 1958 Pontiac. Upon such discovery, Gary Aanenson's father became upset that his son should be driving such a "piece of junk". Gary Aanenson and his father discussed purchasing another automobile to replace the 1958 Pontiac. After acquiring the 1958 Pontiac, Gary Aanenson did not again drive the 1960 Cadillac.

While driving the 1958 Pontiac on October 22, 1965, Gary Aanenson was involved in an automobile accident as a result of which the claims of the remaining defendants arose. No notice of the acquisition of the 1958 Pontiac had been given plaintiff as of the time of the accident.

The policy of insurance issued to Gary Aanenson by plaintiff contains the following condition:

"If the named insured acquires ownership of a private passenger or utility automobile during the policy period he must notify the Company within thirty days after the date of such acquisition of his election to make this policy applicable to such automobile, except that the insurance under Coverages A, B and C shall apply automatically to such automobile if it replaces a described automobile."

The controlling general rule can be simply stated: A provision in an insurance policy for automatic coverage of replacement vehicles extends coverage to a newly acquired vehicle only if the allegedly replaced vehicle has been disposed of by the named insured or is inoperable or incapable of further service. See, generally, 7 Blashfield, Cyclopedia of Auto. Law & Prac. § 316.5. Defendant cites the cases of Dean v. Niagara Fire Ins. Co., 24 Cal.App.2d Supp. 762, 68 P.2d 1021 (1937), and Merchants Mut. Cas. Co. v. Lambert, 90 N.H. 507, 11 A.2d 361, 127 A.L.R. 483 (1940), as contradicting this general rule. However, the decision in the *Dean* case was the result of the peculiar language of the policy involved,[4] and the *Merchants Mut. Cas. Co.* case is consistent with this general rule, because the replaced vehicle in that case was in an inoperable condition.

Since in the instant case the allegedly replaced vehicle, the 1960 Cadillac, remained operable, the controlling issue is whether or not Gary Aanenson disposed of said automobile.

In a case, like the instant case, in which the named insured is merely entitled to the use of the allegedly replaced vehicle, and title to said vehicle is in a third party, the requirement that the allegedly replaced vehicle be disposed of is satisfied if the named insured completely and permanently abandons the use of said vehicle. Under such circumstances it is entirely reasonable for the

4. The "replacement" provision of the policy in the *Dean* case provided that coverage would terminate on the replaced vehicle and extend to the replacing vehicle automatically *at the time of delivery of the replacing vehicle.* Consequently the court found that the time of replacement was the time of delivery of the replacing vehicle rather than the time of disposal of the replaced vehicle. No such language appears in the insurance policy presently being construed by the court.

insured to believe that he has replaced the vehicle named in the insurance policy with the newly acquired vehicle. It is apparent that in such circumstances the undefined term "replaces" is an ambiguous term, and ambiguities are to be resolved in favor of the insured. See e. g., Motor Vehicle Cas. Co. v. Smith, 247 Minn. 151, 76 N.W.2d 486 (1956).

■ There is ample evidence that Gary Aanenson completely and permanently abandoned the use of the 1960 Cadillac. Gary Aanenson purchased an automobile of his own, the 1958 Pontiac, and never again drove the 1960 Cadillac. That this complete abandonment of the use of the 1960 Cadillac was permanent is demonstrated by the fact that Gary Aanenson and his father discussed the purchase of another car to replace the 1958 Pontiac. Such discussion would not have been necessary if Gary Aanenson was interested in renewing his use of the 1960 Cadillac.

■ Plaintiff contends that the 1960 Cadillac was not disposed of because title to said vehicle remained in Gary Aanenson's father. The cases cited by plaintiff in support of this contention, Yenowine v. State Farm Mutual Auto. Ins. Co. (6th Cir. 1965), 342 F.2d 957, cert. den. 382 U.S. 830, 86 S.Ct. 68, 15 L.Ed. 2d 74; Lynam v. Employers' Liability Assurance Corp. (D.C.Del.1963), 218 F. Supp. 383, affd. 3 Cir., 331 F.2d 757; and State Farm Mutual Auto. Ins. Co. v. Shaffer, 250 N.C. 45, 108 S.E.2d 49, 54 (1959), all required a separation of the owner of the allegedly replaced vehicle from title to said vehicle. However, in each of these cases the owner of the allegedly replaced vehicle was the named insured. Such cases can hardly be considered controlling in a case, like the instant case, in which the named insured is not the owner of the allegedly replaced vehicle. The requirement that the allegedly replaced vehicle be disposed of cannot be so unreasonably interpreted as to require a separation of title from the owner of said vehicle in a case in which the owner is someone other than the named insured.

■ Plaintiff expresses concern that if automatic coverage attaches to a replacement vehicle before the owner of the replaced vehicle is separated from title thereto, it will be exposed to the risk of double coverage. Theoretically, no matter what point in time is chosen as the moment of replacement invoking automatic coverage, the insured will never be exposed to the risk of double coverage, since implicit in policy provisions for automatic coverage of replacing vehicles is automatic termination of coverage of replaced vehicles, whether or not a change in ownership of replaced vehicles occurs. See 7 Blashfield, Cyclopedia of Auto. Law & Prac., § 316.5 at p. 668; cf., Missouri Managerial Corp. v. Pasqualino, 323 S.W.2d 244 (Mo.App. 1959). Plaintiff, however, argues that as a practical matter it could not avoid double coverage, since it would not be able to prove the fact of replacement if the 1960 Cadillac were involved in an accident subsequent to the purchase of the 1958 Pontiac. Arguably, only if there is a change in the ownership of a replaced vehicle in operable condition could the insured prove the fact of replacement and thereby avoid double coverage. As already observed, it would be unreasonable to require a change in the ownership of the replaced vehicle when ownership of said vehicle is in someone other than the named insured. The cases cited by plaintiff in support of its contention that impossibility of proof by the insurer of the fact of replacement avoids automatic coverage of the replacing vehicle, McKinney v. Calvert Fire Ins. Co., 274 S.W.2d 891 (Tex.Civ. App.1955), and Mitcham v. Travelers Ind. Co., 127 F.2d 27 (4th Cir. 1942), involved situations in which the owners of the allegedly replaced vehicles were the named insureds, and perhaps these cases can be distinguished on this ground. In any event, the Court feels that it need not be concerned with any possible difficulty of proof of replacement on the part of plaintiff, since plaintiff could have protected itself by including an appropriate definition of the term "re-

places" when it drafted the policy of insurance presently being construed by the Court.

The Court concludes, therefore, that the 1958 Pontiac purchased by Gary Aanenson replaced the 1960 Cadillac described in the policy of insurance issued by the plaintiff National Indemnity Company and renewed by plaintiff on September 17, 1965, and that the defendant Gary Aanenson had coverage under said policy of insurance for the accident which occurred on October 22, 1965, while he was driving the 1958 Pontiac.

Let judgment be entered accordingly.