## Filaseta *v.* Pennsylvania Threshermen and Farmers' Mutual Insurance Company, Appellant.

Argued September 14, 1966.   Before Wright, Watkins, Montgomery, Jacobs, Hoffman, and Spaulding, JJ. (Ervin, P. J., absent).

*Alan M. Black,* with him *Efron & Black,* for appellant.

*Edmund G. Hauff,* with him *Dower, Huston & Cahn,* for appellees.

OPINION BY WATKINS, J., March 23, 1967:

This is an appeal from the judgment of the Court of Common Pleas of Lehigh County entered on a verdict in favor of the appellees, Michael C. Filaseta and Rocco Filaseta, the plaintiffs below, and against The Pennsylvania Threshermen and Farmers' Mutual Casualty Insurance Company, the appellant, in the amount of $2154.32; and from the denial by the court below of motions for a new trial and for judgment n.o.v.

On July 16, 1958, the insurance company issued an insurance policy to Michael C. Filaseta, one of the appellees, which provided liability coverage for a 1949 Studebaker truck and a 1948 Studebaker truck for a term of one year. Automobile coverage was also provided for a newly acquired vehicle if it qualified under the following language of the policy: "(4) Newly Acquired Automobile—an automobile, ownership of which is acquired by the named insured or his spouse if (1) it replaces an automobile owned by either and covered by this policy . . .".

The 1949 Studebaker truck was used by the insured, a masonry contractor, for the purpose of hauling scaffolding, lumber and tools. While being so used in June 23, 1959, it broke down on the turnpike and had to be towed to a garage. The insured then borrowed a 1953 Chevrolet truck in order to continue his business. This truck was used for the same purpose for which the

Studebaker was used. Subsequently, the insured bought the Chevrolet truck, receiving the title on July 11, 1959.

On July 14, 1959, while being driven by Rocco Filaseta, one of the appellees, in the course of his employment by his brother Michael Filaseta, the Chevrolet truck was involved in an accident. As a result of the accident trespass actions against both appellees were brought in Lehigh and Montgomery counties. When notified, the insurance company refused to defend the actions on behalf of its insured. The insured employed an attorney and the claims were settled for a total sum of $1554.32. The present action was instituted by the insured to recover that sum and also the amount which the appellees were required to pay as counsel fees. The jury gave the insured a verdict in the amount of $2154.32.

At the time the accident occurred the 1949 Studebaker truck was still undergoing repairs. After it was damaged it was never used in the insured's business as the record is clear that the work that it did perform was performed by the Chevrolet truck. The only time the Studebaker truck was operated was in order to bring it from the garage where the repairs were made to the service station where it was put up for sale. It was in the same week of the accident to the Chevrolet truck that the repairs were completed and the insured took possession of it and placed it on the service station lot where a "For Sale" sign was placed on the truck. It remained there until sold two months later for fifty dollars.

On July 11, 1959, the same day he received title to the Chevrolet the insured called the broker who handled his insurance and left instructions with the broker's secretary that the Chevrolet truck was to be added to his coverage. This was not done until the termination of the policy on July 16, 1959, when the broker, without the knowledge of the insured, caused the latter's

liability insurance to be transferred to American Casualty Company, which issued a policy affording coverage for the 1948 and 1949 Studebaker trucks and also the Chevrolet truck.

The issue involved in this appeal is whether the Chevrolet truck was a replacement for the 1949 Studebaker truck within the meaning of the clause in the policy which provided automatic coverage for a newly acquired vehicle if it replaced a damaged vehicle. The insured contends that there was sufficient evidence from which a jury could find that there was a replacement. The company contends that the retention of ownership of the Studebaker by the insured precluded the transfer of coverage to the newly acquired vehicle, i.e., the Chevrolet truck, which was an additional vehicle and not a replacement vehicle. As the court below said: "What constitutes a replacement vehicle is a question which appears not to have been previously considered by the appellate courts of this state. Cf. Paupst v. McKendry, 187 Pa. Superior Ct. 646. And the decisions in those jurisdictions where the question was considered have not always been in complete harmony." The general rules that words used in an insurance policy are to be given their natural and usual meaning unless they are otherwise defined in the policy and that ambiguities must be resolved in favor of the insured are applicable to the instant problem.

The court below very ably discussed the problem and reviewed carefully the definition and treatment by other jurisdictions of "replacement" and "newly acquired automobile" as follows:

"In the normal situation, possession of the vehicle described in the policy is surrendered to the dealer at the time a new vehicle is delivered. This is a clear case of replacement and presents no problems. Where ownership of the old vehicle is temporarily retained, however, the result is not always so clear.

"In the present case, the 1949 Studebaker truck was in the garage for repairs and therefore out of service from June 23, 1959, when it broke down and had to be towed from the Turnpike, until after the accident on July 14, 1959. Upon completion of repairs, it was used only for transportation incident to its sale. After the Chevrolet truck was acquired, originally upon loan and subsequently by purchase, it was used regularly by the insured in his masonry contracting business in place of the Studebaker. Under these circumstances, we are of the opinion that temporary retention of ownership of the Studebaker truck did not ipso facto prevent the extension of coverage to the newly acquired Chevrolet.

"Under circumstances almost identical to those in the present case, the Court of Appeals of Ohio in Brescoll v. Nationwide Mutual Insurance Co., 116 Ohio App. 537, 189 N.E. 2d 173, concluded that, to all intents and purposes, the newly acquired vehicle had replaced the vehicle recited in the policy. And in Merchants Mutual Casualty Co. v. Lambert, 90 N.H. 507, 11 A. 2d 361, the Supreme Court of New Hampshire affirmed a finding that a replacement had occurred where the insured ceased to use a vehicle in his business and relegated it to his garage because it was out of repair and not fit to be driven on the public highway, and the newly acquired vehicle was used for the very same purpose for which the old one had previously been used. See also: Royer v. Shawnee Mutual Insurance Co., supra; Nationwide Mutual Insurance Co. v. Mast, supra.

"On the other hand, a review and analysis of the cases relied upon by the defendant fails to reveal circumstances identical or even comparable to those in the instant case. Even Mitcham v. Travelers Indemnity Co., 127 F. 2d 27, C.A. 4th, which restricts the meaning of 'replace' more severely than other decisions and, in our opinion, achieves an unrealistic result, is not apposite. In that case, a new car was purchased and

the car described in the policy was delivered to the dealer to be sold on behalf of the insured. Because the original car was in a fully operable condition and the title thereto had been retained by the insured, the court opined that there could be no replacement because the assured at any time could have taken the old car from the custody of the dealer and put it into use. An equally questionable result was reached in McKinney v. Calvert Fire Insurance Co., 274 S.W. 2d 891 (Tex.), where the insured retained possession of the vehicle named in the policy for the purpose of finding a buyer for it. There too, however, the vehicle was at all times in a fully operable condition.

"The defendant also relies upon Yenowine v. State Farm Mutual Automobile Insurance Co., 342 F. 2d 957, C.A. 6th, but this decision too is readily distinguishable. In that case, the vehicle recited in the policy was 'in running order' and the issue was whether the insured, upon acquiring a new vehicle, had made a gift of the vehicle retained to her son. In holding that no gift had been made, the court did recite the rule to be that a replacement could not occur unless the vehicle described in the policy had been disposed of or was incapable of further service. To bar a replacement under the circumstances of this case, however, would require us to hold that where the original vehicle is retained, it cannot be replaced unless it was not only incapable of further service but also incapable of being repaired. No decision has so held. And we do not believe 'replace' should be so narrowly defined.

"The defendant argues that if a newly acquired vehicle can replace one whose ownership is temporarily retained by the insured, such a person will thereby receive coverage for two automobiles while paying a premium insuring only one. That problem, however, is not presently before us. It is enough that the vehicle recited in the policy was out of service because of nec-

essary repairs at the time the new vehicle was acquired and that the circumstances were such that a jury could find that, in fact, it had been replaced. The insurer, if it had seen fit to do so, could have inserted a provision that the automatic coverage should not attach to a replacing vehicle until the insured had parted with the ownership and possession of the replaced truck, but in the absence of any such provision in the policy, these factors may properly be regarded as indecisive. See Merchants Mutual Casualty Co. v. Lambert, supra."

It is true that courts in other jurisdictions have been reluctant to permit automatic replacement coverage for a new vehicle when the insured has at his disposal the operable listed motor vehicle within his complete control and possession. The courts are against imposing double exposure on the insurer so that the facts in each individual case determine the result. In this case there was no factual risk of the insurance company covering two trucks at the same time as the listed vehicle was inoperative, or had been placed upon a lot for resale where it was not subjected to the risks run by the replacement vehicle. In such cases the courts have found in favor of the insured. Most certainly, a hard and fast rule that the car must be junked or sold before the replacement clause can go into effect would work in many cases a substantial injustice.

Where a provision such as the one being discussed here is subject to different constructions, one favorable to the insurer and one favorable to the insured, the construction favorable to the insured should prevail. The insured is entitled to the protection he may reasonably expect from the terms of the policy he purchased. P.L.E. Insurance §94.

Two days after the accident the coverage with the insurance company terminated. On July 11, the same day he got title to the substituted vehicle he had instructed his broker to add the Chevrolet to his cover-

age. On the termination of the policy, the placing of the new policy with a new company which included the three vehicles was without the knowledge and authority of the insured. The insurance company contends that this fact shows his intention not to replace but to cover both trucks. We agree with the court below that the question of intention was decided as a question of fact by the jury on proper instructions by the court.

Judgment affirmed.