**BECK MOTORS, INCORPORATED, a Corporation, Plaintiff-Respondent,**

v.

**FEDERAL MUTUAL INSURANCE COMPANY, a Corporation; Defendant-Appellant.**

**No. 33289.**

St. Louis Court of Appeals, Missouri.

June 13, 1969.

Hendren & Andrae, Jefferson City, Kelly Pool, and Charles H. Howard, Jefferson City (Brief), for defendant-appellant.

Graham & Hawkins, Robert L. Hawkins, Jr., Jefferson City, for plaintiff-respondent.

GERALD M. SMITH, Commissioner.

This is an appeal from a judgment entered in a court-tried case in favor of plaintiff-respondent. Specifically, it involves what constitutes a replacement vehicle in the automatic coverage provision of an automobile insurance policy. Both parties in their excellent briefs state this is a matter of first impression in this state and our independent research supports such conclusion.

The facts are basically undisputed. The policy involved was originally issued on November 12, 1964, expiring January 25, 1965, and was extended to a time after October 1, 1966, the date of the accident. The policy was issued to Wilbur A. Beck, d/b/a Beck Motors, Inc., a Chrysler-Plymouth automobile dealership. The only coverage provided was comprehensive and collision or upset on a 1965 Dodge. By various endorsements the automobile covered was changed periodically, the last such endorsement prior to October 1, 1966, described a 1967 Plymouth, and was effective September 28, 1966. This endorsement was superseded by another endorsement effective October 2, 1966, describing a 1966 Dodge, which had been demolished in a one-car accident on October 1, 1966. The issue here is whether the 1966 Dodge had replaced the 1967 Plymouth on October 1. The declarations of the policy, made a part thereof, show the named insured (Mr. Beck) and Clarence A. Reinsch as the operators of the vehicle. Mr. Reinsch is described as a salesman and the declarations state he would operate the vehicle seventy-five per cent of the time. In August or September, 1966, Mr. Reinsch, who was in fact sales manager of plaintiff, terminated his full time employment with plaintiff, and was replaced as sales manager by Mike Hoffman. No change was made in the declarations to delineate Hoff-

man as a driver of the insured vehicle. It was the custom of plaintiff to furnish the sales manager with an automobile for his use, and when that vehicle was sold, a different car would be furnished. When such different car was furnished, the plaintiff would request a change in the car listed in the policy, and the change would be shown by endorsement. In addition to the sales manager, the plaintiff was accustomed to furnishing an automobile to Bill Garrison. Garrison worked for the bank at which Beck transacted business. Although delineated a lease by plaintiff, the arrangement between plaintiff and Garrison was oral, was not for a fixed term, and required Garrison to pay all expenses, upkeep, gas, oil, and any service required to care for the automobile. Garrison also was to obtain insurance on the automobile and to pay any expense not covered by warranty. When plaintiff had an opportunity to sell the car being used by Garrison, the latter would relinquish it and receive in its place another car from plaintiff's stock. The car used by Garrison was operated with plaintiff's dealer plates, as was the car furnished the sales manager. In return for the use of the car furnished by plaintiff (for which he paid plaintiff nothing) Garrison did the bank work for plaintiff, assisted in repossessions, and would urge friends and acquaintances who saw or rode in his car to patronize plaintiff if they liked the car. The arrangement between plaintiff and Garrison and the custom in regard to the sales manager was known to the general agent of defendant who wrote the insurance.

On September 28, 1966, an opportunity arose to sell the automobile then being driven by Garrison. In keeping with the agreement between Garrison and plaintiff, plaintiff picked up the car Garrison was driving and left in its place the 1967 Plymouth listed in the September 28, 1966, endorsement to the policy involved, which car had earlier that day been furnished to Hoffman. Thereafter and until October 1, 1966, Hoffman was not furnished a car by plaintiff and used his own. On October 1, 1966, plaintiff acquired in trade a 1966 Dodge which was turned over immediately to Hoffman. On the way home, Hoffman was killed and the car demolished when it ran off the road. Defendant refused payment under the collision coverage on the sole basis that the vehicle demolished was not covered by its policy of insurance. Plaintiff owned approximately 200 to 250 automobiles at the time of the accident; it did not have fleet coverage; and it had eight dealer plates used interchangeably on the cars owned by it.

The Circuit Court entered its judgment for plaintiff for the full value of the vehicle less the deductible amount and defendant appeals. We reverse.

The issue before us is the meaning of "replace" in the following policy provision:

"(a) Automobile.  *  *  *  the word 'automobile' means:

*  *  *  *  *  *

(4) Newly acquired Automobile—an automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household, if (i) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and (ii) the named insured or such spouse notifies the company within thirty days following such delivery date;  *  *  *."

Although the policy is issued to "Wilbur A. Beck d/b/a Beck Motors, Inc." the pleadings and interrogatory answers of both parties establish that the policy was intended to cover loss to the corporation which in fact owned the car described. In view of the admissions of the parties in this regard, and having in mind the not uncommon error of treating a corporation and its sole (or nearly so) stockholder as

the same entity, we treat the contract here as if it had been issued to Beck Motors, Inc., the plaintiff.

■ Defendant does not dispute that plaintiff owned the 1966 Dodge. Plaintiff does not contend that the defendant insures all automobiles owned by it nor does plaintiff contend that it notified the defendant of the change of vehicles prior to the accident. The parties submit this case for determination solely on whether the 1966 Dodge replaced the 1967 Plymouth within the language of the policy. Although giving deference to the trial court's factual determinations, we must review the record de novo. Particularly here, where the evidence is not in dispute, and only one witness having testified, no conflict in the testimony exists. We also approach this matter with due deference to the rules of interpretation of insurance contracts that plain and unambiguous language must be given its plain meaning; that where the language is susceptible to two interpretations, provisions limiting coverage will be construed most strongly against the insurer; and that ambiguity does not authorize a perversion of the language or the rewriting of a contract. Brugioni v. Maryland Casualty Co., Mo., 382 S.W.2d 707 [2–4]; Hughes v. Great American Ins. Co., Mo. App., 427 S.W.2d 266 [2–6].

■ In the absence of a replacement provision in an automobile comprehensive or collision policy, the policy will not cover damage to a vehicle other than the one described in the policy. Hoffman v. Illinois Nat. Casualty Co., 7 Cir., 159 F.2d 564. The frequent exchange, purchase and sale of cars by the populace generally created the need for a provision to allow continuous coverage under policies of insurance when a sale or exchange of the described vehicle occurs. The provision now before us is the result of that need. Its purpose is to permit the automatic extension of coverage to a car not specified by the policy, where that vehicle is acquired to replace the vehicle described, and allows the

insured a reasonable time (here 30 days) to notify the company of the new vehicle to be covered. It was not intended and cannot be construed to provide coverage for additional vehicles not listed in the policy and used interchangeably by the insured with the listed vehicle.

Although the provision here has not been interpreted or construed by the Missouri appellate courts, it has been exposed to judicial scrutiny in other jurisdictions. The most commonly accepted definition of what constitutes a replacement vehicle is found in State Farm Mutual Automobile Ins. Co. v. Shaffer, 250 N.C. 45, 108 S.E.2d 49, where the court stated:

"It is our opinion that the replacement vehicle is one (1) the ownership of which has been acquired after the issuance of the policy, and (2) during the policy period, and (3) it must replace the car described in the policy, which must be (4) disposed of or (5) be incapable of further service at the time of the replacement." (l. c. S.E.2d 54) (Numbering supplied.)

Following this definition the courts generally require that the replaced automobile either be actually disposed of by transfer of ownership contemporaneously with acquisition of the replacement or be incapable of operation at that time and at anytime thereafter while owned by the insured. See Yenowine v. State Farm Mutual Automobile Ins. Co., 6 Cir., 342 F.2d 957; Mitcham v. Travelers Indemnity Co., 4 Cir., 127 F.2d 27; McKinney v. Calvert Fire Ins. Co., Tex.Civ.App., 274 S.W.2d 891; Quaderer v. Integrity Mutual Ins. Co., 263 Minn. 383, 116 N.W.2d 605; Nationwide Mutual Ins. Co. v. Fleming, 4 Cir., 383 F.2d 145; Continental Casualty Co. v. Employers Mut. Cas. Co., 198 Kan. 93, 422 P.2d 560; and see 34 A.L.R.2d 936 for a compilation of the cases.

There is authority which modifies the stringent requirements of this definition somewhat. The relaxation of this rule

found in some of the cases seems to have its genesis in Merchants Mut. Casualty Co. v. Lambert, 90 N.H. 507, 11 A.2d 361, 127 A.L.R. 483, where no disposition had been made of the listed vehicle and it was legally operable, in the sense that it was registered and could therefore be operated under the state law on the highways of the state. In fact, the listed vehicle was unserviceable, and remained in the insured's garage at all times after acquisition of the replacement vehicle. The court held the second vehicle to have replaced the listed vehicle within the meaning of the policy. The decision is based in part upon the court's conclusion that the second car was acquired with the intent that it replace the listed automobile and its use was in keeping with that intent. Thereafter, some decisions which in their language seem to modify the disposal or inoperable requirement of *Shaffer* appeared, based predominately upon the intent to replace theory of *Lambert*. Plaintiff has cited several of these cases for the language used therein in support of its contention that the Dodge replaced the Plymouth in the use to be made of it. Hoffman v. Illinois Nat. Casualty Co., 7 Cir., 159 F.2d 564 involved a listed truck which was wrecked and not repaired but which was still owned by insured at the time of purchase of the second vehicle, which the court held to be a replacement within the policy. Maryland Indemnity and Fire Ins. Exchange v. Steers, 221 Md. 380, 157 A.2d 803, was based upon the legally and physically inoperable condition of the listed car. Nationwide Mutual Ins. Co. v. Mast, 52 Del. 127, 153 A.2d 893, arose on a motion for summary judgment. There the insured experimented with the listed truck attempting to achieve the use he desired, then purchased a second vehicle and found he could achieve his purpose and let the listed vehicle be repossessed. The repossession occurred before the accident and at the time of the accident the insured had only one vehicle. Dean v. Niagara Fire Ins. Co., 24 Cal.App.Supp.2d 762, 68 P.2d 1021, involved a contention that the replacement vehicle was not owned by

insured because technically the registration had not been completed although possession had been taken by the insured. It does not appear there that insured owned two cars at the same time. National Indemnity Co. v. Aanenson, D.C.Minn., 264 F.Supp. 408, involved an insured who did not own the listed car (his father did), and who upon acquiring his own car ceased using his father's car completely. The court held that in that situation the requirement of disposal was met when the son completely and permanently abandoned the use of the listed vehicle. Filaseta v. Pennsylvania Threshermen and Farmers' Mutual Casualty Ins. Co., 209 Pa.Super. 322, 228 A.2d 18, and Brescoll v. Nationwide Mutual Ins. Co., 116 Ohio App. 537, 189 N.E.2d 173, involve similar situations where the listed vehicle was inoperable but capable of repair at the time the replacement vehicle was obtained. In both cases the listed vehicle was subsequently repaired and its only use after it was made operable was in connection with the sale of the vehicle. We find no cases which go further than *Filaseta* and *Brescoll* in allowing coverage under the replacement provision. The basis of the *Brescoll* decision is found in the following language of the opinion which has some pertinence here: "The fact that the Ford car was retained by the named insured and was driveable for some six weeks prior to the accident does not preclude the transfer of coverage to the Lincoln car, since the Lincoln was *actually purchased to replace* the Ford for the same use." (1. c. 176) (Emphasis supplied).

■ Under either line of cases the policy provision is not intended or interpreted to provide coverage for an additional vehicle. To so interpret would allow coverage on two vehicles for the premium on one. It is not necessary for us to determine the precise limits at which a vehicle becomes "additional" rather than "replacement." But without setting hard and fast rules, it is necessary, in order for the provision to apply, that the newly-acquired vehicle take the place of the described car and the de-

scribed car be treated thereafter in such fashion that it is clearly apparent it has been replaced and is no longer covered by the policy. Notification to the company of a replacement, of course, is such treatment and clearly establishes what vehicle is covered. Disposition of the vehicle, or its being and remaining in an inoperable condition also presents concrete evidence of the change of coverage. There may be other possibilities of treatment which would establish that the vehicle has been replaced. But the insurance company may not be held except upon a clear showing of replacement, nor in a circumstance where the insured could show that either car was covered, depending on which one was involved in the accident.

The treatment of the Plymouth here does not establish that it was replaced by the Dodge. The Plymouth was not disposed of. It was turned over to Garrison for his use, title remaining in plaintiff. Plaintiff's dealer plates were used on the vehicle. The agreement between plaintiff and Garrison required the return of possession to plaintiff upon request of plaintiff at any time. Garrison's relationship with plaintiff was not as an independent lessee. The vehicle was supplied in return for services to be performed for plaintiff by Garrison including utilizing the vehicle to interest members of the public in buying cars from plaintiff. We need not determine Garrison's legal relationship to plaintiff. It is sufficient to say that the ownership of the Plymouth and the right to possession and operation of the car remained at all times in plaintiff. We cannot hold that allowing Garrison the use of the vehicle was a disposition within the meaning of the cases. Such a disposition clearly contemplates a divestiture of ownership or at least a termination of all right to possess, operate, and control.

It is clear the Plymouth was not inoperable and no such contention is advanced. Plaintiff contends that the Dodge replaced the Plymouth in the use to be made of the vehicle, i. e., as the sales manager's car. It is then contended that this allows recovery under the *Brescoll* case. Several answers are available to that contention. The policy does not cover a sales manager's car specifically by name of employee or position. It covers a specifically described automobile. Furthermore, as indicated by the emphasized language heretofore set out, *Brescoll* turns upon the intention of the insured at the time of acquiring the replacement automobile that it was acquired for the *specific* purpose of replacing the insured car. Here, plaintiff is in the automobile business. The evidence shows that the Dodge was acquired as a trade-in for a new car sold by plaintiff. Plaintiff did not acquire the vehicle for the purpose of replacing the Plymouth but in the regular course of its business as an automobile dealer. Having acquired the car in that manner it was then furnished to the sales manager for his use, rather than allowing it to sit idle. Nor was the use of the Plymouth solely incident to its sale. Although, as plaintiff says, in the nature of plaintiff's business all cars are hopefully to be sold, we cannot treat the use by Garrison as solely incident to sale. He used the car for his personal business as well as to exhibit it for potential sale to third parties. No evidence was adduced that the vehicle was in fact insured by Garrison or that his use in any way reduced the risk covered by the policy. Under the facts here we cannot say that the treatment of the Plymouth was such as to remove it from coverage under the policy as the described vehicle. The 1966 Dodge was not covered by defendant's policy, and plaintiff cannot recover against defendant for its destruction.

The judgment is reversed.

PER CURIAM.

The foregoing opinion by SMITH, C., is adopted as the opinion of this Court. Accordingly, the judgment is reversed.

BRADY, J., and JAMES H. KEET, Jr., Special Judge, concurs.