RALPH CLARNO v. GAMBLE-ROBINSON COMPANY AND
ANOTHER.
CONTINENTAL CASUALTY INSURANCE COMPANY AND
ANOTHER, GARNISHEES.[1]

December 8, 1933.

Nos. 29,575, 29,586.

[1]Reported in 251 N. W. 268.

*Cobb, Hoke, Benson, Krause & Faegre* and *Loring M. Staples,* for appellant St. Paul Mercury Indemnity Company.

*Kelly & Mangan,* for appellant Continental Casualty Insurance Company.

*Dell & Dell, Stinchfield, Mackall, Crounse, McNally & Moore,* and *M. D. Nicholson,* for Ralph Clarno, respondent.

*OLSEN, Justice.*

The St. Paul Mercury Indemnity Company and the Continental Casualty Insurance Company appeal separately from a judgment holding each of them liable as garnishees upon a judgment for $6,000 and interest and costs in favor of the plaintiff, Ralph Clarno, as father of his minor child, and against the Gamble-Robinson Company.

The Gamble-Robinson Company is a wholesale dealer in fruits and produce in Minneapolis, with a branch house in Alexandria, in this state. It owns and uses certain trucks and automobiles in its business, among them a Chevrolet truck used by it at Alexandria. It carried casualty insurance on its trucks and cars in the St. Paul Mercury Indemnity Company. The defendant Robert Schmidt, located at Alexandria, operated certain trucks for carrying freight on certain truck lines out of Alexandria. He owned, among others, the Reo truck here in question. He carried casualty insurance on his trucks and cars in the Continental Casualty Insurance Company. This Reo truck was larger and heavier than the Chevrolet truck of the Gamble-Robinson Company.

About May 1, 1930, country highways over which defendant Schmidt operated his Reo truck were in such condition that the

highway department ordered him not to operate such truck over some of the highways until roads became dry and suitable for use. The Gamble-Robinson Company used its Chevrolet truck for deliveries in the city of Alexandria. The order of the highway department did not prevent the use of the Reo truck in the city of Alexandria. Schmidt then arranged with the Gamble-Robinson Company for the temporary use of its lighter Chevrolet truck on the country roads until such time as the roads dried, and for the Gamble-Robinson Company to use the Reo truck on the streets of the city during that time. On May 7, 1930, an employe of Gamble-Robinson, driving defendant Schmidt's Reo truck on a street in Alexandria, collided with and injured plaintiff's minor child, for which injury plaintiff recovered judgment against Gamble-Robinson Company as hereinbefore mentioned. The two insurance companies were then garnisheed and both held liable, as stated.

■ Taking up first the appeal of the St. Paul Mercury Indemnity Company. Its policy was issued March 30, 1930. The coverage is on automobiles and trucks of which the Gamble-Robinson Company is the unconditional and sole owner. Among others it covered the Chevrolet truck mentioned, which at the time of the accident was in temporary use by Schmidt. The only provision in the policy which can in any way be claimed to give coverage on the Reo truck temporarily used by Gamble-Robinson must be found in the special endorsement reading as follows:

"In addition to the automobiles described in the undermentioned policy, the said policy is hereby extended also to cover all automobiles acquired by the assured during the policy period and used for the purposes described in Statement #9. The assured agrees to furnish to the company's agent, within thirty days after the purchase of such automobiles, the date purchased and a description of the automobiles, for the purpose of endorsing such automobiles on the policy at a pro rata premium. Failure through oversight on the part of the assured to report automobiles acquired shall not prejudice the assured's rights under the policy. Errors in the reporting of engine numbers or other immaterial details shall not prejudice the interest of the assured.

"This endorsement is effective as of March 30th, 1930.

"All other terms, conditions, limitations and agreements of the policy remain unchanged."

In this endorsement the words "acquired" and "purchased" are both used. The word "acquire" is defined in Webster's dictionary to mean: "To gain by any means, usually by one's own exertions; to get as one's own." In the new Standard dictionary: "To obtain by search, endeavor, practice, or purchase; get as one's own; receive or gain in whatever manner; come to have." Even if standing alone, it is doubtful if the word "acquire" could be stretched so as to include a mere temporary possession of an article with no other right or title thereto; "to gain" appears to mean something more than that. But if we assume that technically the word can be construed to cover such temporary possession, and that, standing alone, the word would leave the meaning of this special endorsement in doubt, then we must necessarily look to other words in the endorsement and to other parts of the insurance contract in search of light as to the meaning of the word. The contract must be construed as a whole. When that is done, there remains no uncertainty. Turning to that sentence in the endorsement wherein the assured agrees to furnish to the company's agent within 30 days "after the purchase of such automobiles, the date purchased and a description of the automobiles for the purpose of endorsing such automobiles on the policy," it is clear that the words "such automobiles," as therein used, refer to and mean the same as the automobiles "acquired," as stated in the first sentence of the endorsement. The endorsement has reference to only one class of automobiles, and that is those purchased. If it covered other than purchased automobiles, it would be just as necessary to make report of those as of the ones bought. Otherwise Gamble-Robinson could operate a fleet of borrowed automobiles at the risk of the insurance company without its having any notice or record thereof and without any premium payment. This construction becomes even clearer when we look back to the coverage of automobiles of which Gamble-Robinson Company was the unconditional and sole owner,

and the limitation that the provision "To Extend The Insurance * * * shall not apply to any automobile leased or hired." It cannot reasonably be assumed that the insurer, while refusing liability on cars leased or hired, intended to extend the insurance to cover cars neither owned, hired, nor leased by the named assured.

We find no doubt as to the meaning of this special endorsement and can construe it to apply only to automobiles which the insured should thereafter acquire some title to by purchase or otherwise.

■ The appeal of the Continental Casualty Insurance Company, which we may refer to as the casualty company, presents a different situation. Generally speaking, the insurance follows the car while operated by any of the persons or parties designated as additional assureds, or covered by the *Additional Assureds* or *Extended Insurance* clauses of the policy. In the policy of the casualty company on the Reo truck, the *Additional Assureds* clause extends the coverage to "any person or persons while riding in or operating any of such automobiles and any person, firm or corporation responsible for the operation thereof," provided the riding in, use, or operation thereof is with the permission of the named assured, except as to public garages, etc., not here important.

That the truck at the time of the accident was being used by Gamble-Robinson Company with the permission of Schmidt, the named assured, is not disputed. There is no good reason shown which would avoid liability on the part of the casualty company, and the trial court properly held it liable.

■ A point is made on two provisions found in the policy, one being that the policy does not cover any automobile "used for commercial purposes in connection with any business other than that of the assured as stated in the schedule." In the schedule the business of the assured is stated to be that of "Truckman." The Gamble-Robinson Company did its own truck hauling in Alexandria, using this Reo truck for that purpose at the time of the accident. The assured, Schmidt, did the same kind of truck hauling in and outside of Alexandria and hauled the same kind of fruits and produce, much of it for Gamble-Robinson Company. The business of Schmidt and the business of Gamble-Robinson Company in which

the truck was used was the trucking business. A reasonable construction of these provisions is that it was the kind of hauling in which the truck should be used that was to be protected and the use not be so limited as to apply to such hauling done only by Schmidt. It might well be that the truck would not be covered if used for some business or purpose other than trucking or for unlawful purposes. In the policy are two other provisions which indicate the conclusion reached. One is that the policy does not cover the truck "while  *  *  *  driven for any purpose other than as specified in the schedule." In the schedule it is stated: "Said automobiles are and will be used for the following purposes only: Business." If there is any conflict between different provisions, the ones most favorable to plaintiff are properly adopted.

We find no errors in the rulings or in the findings of fact and conclusions of law of the trial court on this appeal.

Judgment affirmed as to the Continental Casualty Insurance Company and reversed as to the St. Paul Mercury Indemnity Company.