124 So.2d 721 (1960)
NEWBERN DISTRIBUTING CO., Inc., Appellant,
v.
CANAL INSURANCE COMPANY, a corporation, Appellee.
No. 1795.
District Court of Appeal of Florida. Second District.
December 2, 1960.
*722 Forrest O. Hobbs, Tampa, for appellant.
Shackleford, Farrior, Stallings, Glos & Evans, Tampa, for appellee.
*723 KANNER, Judge.
A declaratory proceeding was brought by Canal Insurance Company against its insured, Newbern Distributing Co., Inc., hereinafter referred to as Newbern, and Richard J. Rogers, an employee or agent of Newbern. The purpose of the suit was to construe and determine the rights and obligations of the parties, under the coverage of the insurance company's policy issued to Newbern, as to a vehicular accident occurring in Wisconsin in 1958. The accident involved a 1953 Diamond T tractor and a Dorsey trailer being pulled by the tractor. The trailer was owned by Newbern, while the tractor was owned and driven at the time by Rogers but was under lease to Newbern. The accident resulted in the institution of litigation in Wisconsin, the defense of which was tendered to the plaintiff insurance company by Newbern. From that tender of defense arose the declaratory action of the insurance company.
Among other things, the court found that no notice had been given to the insurance company by Newbern to add the 1953 Diamond T tractor to the policy or to substitute it in the place of one listed by the policy, that no agreement was entered into by the insurance company or by anyone authorized to act for it to allow Newbern a period of time to give such notice, and that an exclusionary provision of the policy precluded liability on the part of the insurance company since the tractor involved was not covered by the policy. The court then held that the insurance company had no duty to defend the Wisconsin litigation or any other litigation arising from the accident, had no duty to satisfy any judgment rendered in any such litigation, and had no other obligation resulting from the accident.
Provisions of the policy included two automatic coverages, a "Replacement" and a "Substitution" provision.[1] Additionally, the policy contained an exclusionary provision[2] essentially to the effect that if a tractor and trailer were involved in an accident, coverage would extend to neither unless the insurance company had coverage on both.
Because Newbern did not wish to pay the higher premiums required for a "gross receipts" policy, there had been issued to it instead a less expensive unit policy enumerating fourteen tractors and fourteen trailers. There had been numerous changes and substitutions in the units covered by the *724 policy through endorsements made after notification to the insurance company of such changes, and the premiums had been adjusted accordingly. The notifications to the insurance company were made through the insurance agency which had arranged for the policy.
The Dorsey trailer owned by Newbern and involved in the accident was specifically included in the policy coverage, but the Diamond T tractor was not included nor was it listed in any endorsement to the policy. As of the time of the accident, no notice had been given to the insurance company to add that tractor to the policy or to substitute it in the place of another tractor named in the policy.
The question which emerges is whether the quoted replacement and substitution provisions are sufficient to include in the policy coverage the 1953 Diamond T tractor. If neither of the two provisions is sufficient for the tractor's inclusion, when considered with reference to all other provisions, then the exclusionary provision of the insurance policy clearly precludes liability.
Except where controlled by statutes or public policy, an insurance company is free to insert exemption clauses in its liability policy as it deems necessary or proper; and an insurance company is not responsible under its liability policy for risks or causes which have been excepted unless it has waived or is estopped to set up such exception. 45 C.J.S. Insurance § 834, p. 906.
Certain types of provisions are utilized in automobile liabiity insurance policies for the purpose of providing, under specified conditions, automatic coverage for vehicles not described in the policy without the necessity of first securing approval by the insurance company of the change or addition. These types of provisions include a "replacement" provision and a "substitution" provision. Under the replacement provision, coverage is extended automatically to newly acquired automobiles which replace those described in the policy. Under the substitution provision, coverage is automatically extended to a situation where a described vehicle becomes unavailable for use for any one of a number of specified reasons and another vehicle, not owned by the insured, is temporarily used in its place. See 5A Am.Jur., Automobile Insurance, section 83, p. 81; and Annotation, 34 A.L.R. 2d 936. Under the replacement provision providing automatic coverage for newly acquired vehicles, a prerequisite is that the insured acquire ownership of the new vehicle. Aetna Casualty & Surety Co. v. Chapman, 1941, 240 Ala. 599, 200 So. 425; Clarno v. Gamble-Robinson Co., 1933, 190 Minn. 256, 251 N.W. 268; 5A Am.Jur., Automobile Insurance, section 84, p. 82; Annotation, 34 A.L.R.2d at pp. 939 and 941; and 45 C.J.S. Insurance § 829, p. 888. Under the substitution provision it is typically provided that coverage will be extended to a substitute vehicle which is temporarily used where the automobile described in the policy is withdrawn from normal use because of breakdown, repair, servicing, loss, or destruction; and another requirement of this provision is that the substituted automobile not be owned by the insured. American Fidelity & Cas. Co. v. Pennsylvania Cas. Co., Ky. 1953, 258 S.W.2d 5; State Farm Mut. Automobile Ins. Co. v. Bass, 1951, 192 Tenn. 558, 241 S.W.2d 568; Fleckenstein v. Citizens Mut. Automobile Ins. Co., 1950, 326 Mich. 591, 40 N.W.2d 733; 5A Am.Jur., Automobile Insurance, section 87, p. 85; and Annotation, 34 A.L.R.2d at p. 947.
The answer to the question as it has been stated rests within an analysis of the facts of this case in the light of the specific wording of the replacement and substitution provisions. In accomplishing this analysis, we may begin by recalling that the 1953 Diamond T tractor was not owned by the insured. Had that vehicle been under the policy's coverage via the newly acquired automobile provision, this would have been through its specified conditions that the vehicle was being used to replace *725 one owned by the insured, or that the insurance company insured all automobiles owned by the insured. The Diamond T tractor was neither owned by the insured nor used to replace an automobile owned by the insured. Instead, the lease reveals clearly and it is undisputed that the Diamond T tractor was owned by Rogers and was leased by him to Newbern to replace a Mack tractor which the evidence establishes as not having been owned by Newbern but as having been leased to it by one Blair Sinen. The requisite of ownership therefore prevents the application of this automatic coverage provision. This was not a fleet policy and all of the automobiles of the insured were not covered.
Considering now the temporary substitute automobile provision, we observe that had the 1953 Diamond T tractor been under its coverage, this must have been effectuated by the meeting of conditions specified within that provision whereby coverage is extended to vehicles not owned by the insured if those vehicles are temporarily used as a substitute for an insured automobile withdrawn from normal use because of breakdown, repair, servicing, loss, or destruction. Applying this as a test of any coverage which might have appertained to the 1953 Diamond T tractor, the testimony conclusively established that the tractor was not being temporarily used as a substitute for another vehicle by virtue of any reason specified by the provision. Instead, it was leased by Newbern, and the lease had been in effect for more than a month prior to the time the accident occurred.
When the policy was originally issued, Rogers was working for Newbern and a 1952 International tractor which he owned was covered by the policy. He was accidentally injured when he fell from a truck and was incapacitated for a period of time, but he was assured by Newbern's operational manager that he would have his job back when he was able to return to work. Before recovering from his injuries, Rogers sold his International tractor; and Newbern leased another tractor, a Mack, and substituted it in the units covered by the policy. When Rogers recovered he came back to work for Newbern, having acquired the 1953 Diamond T tractor with which this case is concerned. Newbern leased this tractor from Rogers on July 23, 1958, and the arrangement with the owner of the Mack tractor was terminated, while it was on August 30, 1958, that the accident occurred.
The initial load which Rogers carried when he returned to work after recovery from his injuries consisted of knocked-down Bruce boxes made of wood and was in no way perishable. It had been made up about August 1, 1958, although Rogers did not leave Tampa with it until about August 5. It is clear that there was no emergency substitution of Rogers' tractor in place of an insured tractor due to the perishable nature of any commodities to be hauled. It cannot be said, therefore, that the tractor was covered under the temporary substitute provision of the policy.
Since the 1953 Diamond T tractor comes within neither of the two quoted coverage provisions nor in the other provisions contained within the insurance company's policy to Newbern, there appears nothing to take the case out of the exclusionary provision, and the declaratory decree of the court below was properly entered.
Affirmed.
ALLEN, C.J., and SHANNON, J., concur.
NOTES
[1] "IV. Automobile Defined, Trailers, Private Passenger Automobile, Two or More Automobiles, Including Automatic Insurance: (a) Automobile Except with respect to division 2 of coverage C and except where stated to the contrary, the word `automobile' means: (1) Described Automobile  the motor vehicle or trailer described in this policy; * * * (3) Temporary Substitute Automobile  an automobile not owned by the named insured or his spouse if a resident of the same household, while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; (4) Newly Acquired Automobile  an automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household, if (i) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and (ii) the named insured or such spouse notifies the company within thirty days following such delivery date; but such notice is not required if the newly acquired automobile replaces an owned automobile covered by this policy. The insurance with respect to the newly acquired automobile does not apply to any loss against which the named insured or such spouse has other valid and collectible insurance. The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile."
[2] "This policy does not apply: * * * (c) under coverages A and B, while the automobile is used for the towing of any trailer owned or hired by the insured and not covered by like insurance in the company or while any trailer covered by this policy is used with any automobile owned or hired by the insured and not covered by like insurance in the company; * * *"