***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms with minor modifications the Opinion and Award of the Deputy Commissioner.
 ***********
On May 18, 1998, Plaintiff filed a Form 18B claiming benefits for the occupational disease of asbestosis and pleural disease. Defendant-employers Pipe Boiler Insulation Company and Carolina Industrial Insulating Co., Inc. denied liability. Deputy Commissioner Phillip Holmes heard this matter on February 15, 2001. Plaintiff and several co-workers testified at the hearing. The testimony of one co-worker, Louis T. Bagwell, Jr., and Dr. William F. Alleyne was taken by deposition subsequent to the hearing. On June 14, 2001, an Opinion and Award was entered in favor of plaintiff and Atlantic Mutual was determined to be the carrier on the risk.
The Opinion and Award was appealed to the Full Commission. Following the submission of briefs and oral argument, the Full Commission affirmed the Opinion and Award in part, reversed in part and remanded the case to a deputy commissioner to take further evidence. The Full Commission upheld the finding that Plaintiff was injuriously exposed to asbestos and his last injurious exposure occurred while in the employment of Carolina Industrial Insulating Co., Inc. The Full Commission also found that Plaintiff was suffering from asbestosis. However, the Full Commission reversed the award of 104 weeks and instead awarded $10,000 for damage to the lungs pursuant to N.C. Gen. Stat. §97-31(24). The Full Commission remanded this case for a determination of the proper insurance carrier, as there was evidence presented that the carrier found liable, Atlantic Mutual, was not the proper carrier.
Plaintiff filed a Motion for Reconsideration and argued, in part, that the award of $10,000 was improper since the parties did not have an opportunity to argue the severity of the disease for the Industrial Commission to make a proper determination of the damage to the lungs and the compensation that should be awarded. The Full Commission granted the Motion for Reconsideration, vacated the award and remanded the case to a deputy commissioner for further proceedings on who was the proper carrier and what compensation should be awarded. In the interim, Deputy Commissioner Holmes inquired about the coverage issue and found that ACE-USA provided workers' compensation coverage to Carolina Industrial Insulation in South Carolina under the name of Carolina Industrial Insulating Co., Inc. Deputy Commissioner Holmes added ACE-USA as a party/carrier and recused himself. The matter was referred to Deputy Commissioner Glenn for further proceedings.
The Industrial Commission provided ACE-USA with copies of the entire proceeding and allowed it time to investigate the matter and prepare for hearing. ACE-USA was permitted an opportunity to cross-examine any witnesses, call their own witnesses, offer their own evidence, and raise any issues that could have been raised in the initial hearing. ACE-USA chose not to offer any testimony or cross-examine any of the witnesses. ACE-USA argued that although it provided workers' compensation insurance coverage to Carolina Industrial Insulation during the relevant times, the coverage was not applicable in this claim because, it provided coverage for South Carolina only.
The hearing before the Deputy Commissioner was conducted on November 2, 2003. Defendant-carrier, ACE-USA, offered into evidence an affidavit representing its position that it could not find a policy. The parties stipulated into evidence all information from the South Carolina Workers' Compensation Commission regarding coverage for Carolina Industrial Insulating Co. Inc. Plaintiff rested on the evidence previously introduced. The transcript of the February 15, 2001 hearing with exhibits and the deposition testimony of Louis Bagwell, Jr. and Dr. William F. Alleyne are admitted into evidence and included in the record herein.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
The parties stipulated to the following at the original hearing and was not challenged by ACE-USA:
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the named employers and the named employee.
3. Plaintiff was employed by Defendant-Employers, Carolina Industrial Insulating Co., Inc. from 1964 to 1982.
4. Plaintiff has been diagnosed with asbestosis and currently suffers from asbestosis and asbestos-related pleural disease.
5. The parties stipulated into evidence, without need for further authentication or verification, Employee's medical records from the following providers: (a) Dr. William Alleyne; (b) Dr. Albert Curseen; and (c) Dr. Ashton.
6. The parties stipulated into evidence, without need for further authentication or verification, the following documents: (a) Industrial Commission Form 18B with attached diagnosing medical records; (b) Administrative Order filed September 18, 2000 by Executive Secretary Tracey H. Weaver; (c) Industrial Commission Form 61 filed by Defendants Pipe Boiler Insulation and Atlantic Mutual Insurance; (d) Social Security Administration — Itemized Statement of Earnings; (e) Defendants Pipe Boiler Insulation and EBI Companies' Response to Plaintiffs First Set of Interrogatories; (f) Asbestos Removal Permits for Sayles Biltmore Bleacheries; (g) Other documents of asbestos removal, inspections, etc.; and (h) Asbestos Survey Report on Sayles Biltmore Facility dates August 13, 1992.
7. The parties, including ACE-USA stipulated to the additional fact that there is no record of insurance coverage in North Carolina for Carolina Industrial Insulating Co., Inc.
 ***********
Based on the foregoing stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff worked for Carolina Industrial Insulation from 1964 to 1974. In 1974, Pipe Boiler Insulation purchased Carolina Industrial Insulation. Plaintiff worked for Pipe 
Boiler from 1974 until 1982. Pipe and Boiler's office was in North Carolina while Carolina Industrial Insulation's office was in South Carolina. From 1964 to 1971, Plaintiff was an insulator mechanic with Carolina Industrial Insulation. From 1971 to 1978, he was a field superintendent and from 1978 to 1982, he was branch manager.
2. As an insulation mechanic, Plaintiff removed old insulation and then installed pipe insulation, duct insulation and insulated boilers, chillers, smokestacks, etc. Plaintiff removed and installed insulation on a variety of piping in industrial facilities. During Plaintiff's time as an insulator mechanic, the industry standard for insulation used on steam piping and condensate piping was asbestos.
3. As an insulator mechanic, Plaintiff went to different job sites; his duties started with tearing off old insulation, which was usually wrapped with cloth or wired around a pipe. He stated that most of the time, the old insulation was in a deteriorated condition and hanging off of the piping. He unwrapped the cloth or cut the wiring and then knock the insulation off the pipe and then used a hammer, rubber mallet, wire cutters or his bare hands to tear away the old insulation. When Plaintiff removed the insulation, the insulation fell to the floor. This was an extremely dusty process. Plaintiff testified that the insulation he removed was most often asbestos insulation. The basis for this belief was partially because of his experience. He has worked in the insulation industry for forty years and has learned the different types of insulation products based upon appearance and how they are used. He further testified that most insulation prior to 1973 was asbestos insulation. Further, he could tell from the color and texture and how the product was used that most of the insulation he removed was asbestos.
4. After Plaintiff removed asbestos from a particular location, he re-insulated the piping. He testified that up until 1973, he used asbestos insulation to insulate piping. He knew this from the appearance of the insulation but also because the insulation came in boxes labeled "asbestos." When Plaintiff insulated a pipe, he cut the pieces to fit the length of the pipe using a saw or knife. Plaintiff then wired the pieces together. Plaintiff testified that insulating pipes always created a tremendous amount of dust.
5. Not only did Plaintiff install asbestos insulation, but he also installed block and board insulation. This insulation was used on flat surfaces around boilers and similar types of machinery board insulation had to be cut to fit a particular area. The process of cutting this board was very dusty.
6. Sawing was done virtually every day and always created significant dust. Plaintiff testified that practically every day from 1964 to 1971, he worked hands on with asbestos products. Despite the fact that the removing and installing asbestos was a dusty job, he was never provided breathing protection.
7. Plaintiff's last job assignment for Defendant-employer where he worked with asbestos products was at Sayles Biltmore Bleacheries in Asheville, North Carolina in 1971. This job involved removing asbestos insulation and replacing it with fiberglass insulation. The job lasted five or six weeks. Plaintiff also worked most weekends at the Sayles Biltmore job. Seventy-five percent (75%) of the Sayles Biltmore job involved removal of asbestos-containing insulation.
8. In 1971, Plaintiff became field superintendent. As a field superintendent, Plaintiff assigned jobs to the employees, ordered supplies, and ensured that jobs were being done properly. Plaintiff ordered asbestos products when he was a field superintendent although he never worked with the products. In this job, Plaintiff spent half of his time in the office and the other half visiting job sites. He testified that he might visit one or two sites a day but would never do any of the work or work with the materials. Plaintiff did not get too close to the work area nor did he closely inspect the insulation. Further, he never stayed at the job site for any length of time. He testified that at most, he would stay for 15 or 20 minutes. He testified that some weeks he did not go to any job sites at all. He further testified that he might not go to a particular job site for a couple of weeks or longer. Mostly, he spent a day or two a week at various work sites at lengths of 15 to 20 minutes per visit.
9. When Plaintiff visited the job sites between 1971 and 1973, the employees would sometimes be working with asbestos, but not always. In 1973, Plaintiff was told by the owners of the Defendant-employer not to disturb asbestos products. He testified that after 1973, he instructed all employees to avoid asbestos and not go near any insulation if they suspected it contained asbestos. He also stopped ordering asbestos products and only ordered fiberglass.
10. In 1978, Plaintiff became a branch manager and worked in an office until 1982 when he left the company. From 1978 to 1982, he never visited a work site.
11. Based on the greater weight of the evidence, the last time that Plaintiff was exposed to asbestos was in 1971 at Sayles Biltmore Bleacheries. There is insufficient evidence from which to find that Plaintiff was exposed to asbestos after 1971.
12. It was stipulated during the hearing of this matter that three witnesses, Don Rowland, Earl Davis and Allen Beattie, Sr., would corroborate all of the testimony of the Plaintiff. Further, one other witness, John Arrowood, would corroborate that there was asbestos at Sayles Biltmore Bleacheries.
13. Plaintiff established that he was exposed to asbestos for thirty days in any seven-month period from 1964 to 1971. Therefore, Plaintiff has been injuriously exposed to asbestos while in the employment of Carolina Industrial Insulation.
14. According to South Carolina Workers' Compensation records, Insurance Company of North America (ACE-USA) was the carrier for Carolina Industrial Insulating Co., Inc. (hereinafter Carolina Industrial Insulation) at the time of Plaintiff's last injurious exposure.
15. Defendant asserts that it cannot locate an insurance policy and argues that since the policy only exists in South Carolina, it must only cover South Carolina injuries and not out of state injuries. However, it is uncontroverted that Carolina Industrial Insulation insured its workers with a contract of insurance through ACE-USA. Carolina Industrial Insulation on a South Carolina corporation, filed its insurance policy with the South Carolina Workers' Compensation Division. It is also undisputed that employees of Carolina Industrial Insulation worked in both North Carolina and South Carolina. Plaintiff performed a significant portion of his work in North Carolina. Carolina Industrial Insulation did not file any statement of insurance with the North Carolina Industrial Commission. Carolina Industrial Insulation employed five or more employees in North Carolina.
16. The initial burden is on the insured to establish coverage for a claim. The burden then shifts to the defendant-carrier to establish that an exclusion applies to the claim. ACE-USA has offered no evidence to support its argument that its policy of insurance excluded Carolina Industrial Insulation employees when working in North Carolina. Based on the greater weight of the evidence, Carolina Industrial Insulation's workers' compensation insurance with ACE-USA covered its employees while working in North Carolina.
17. Plaintiff worked in North Carolina and South Carolina from 1964 to 1971 and thus had the requisite exposure in North Carolina. Further, Plaintiff's last injurious exposure to asbestos, as defined by North Carolina law, would have occurred in 1971 at Sayles Biltmore Bleacheries in Asheville, North Carolina where he worked for five or six weeks. Since this is the date of last injurious exposure, then the injury would have occurred in North Carolina and the North Carolina Industrial Commission has jurisdiction over the claim.
18. In 1998, Plaintiff was diagnosed as suffering from asbestosis and pleural disease by Dr. Albert Curseen of Charlotte, North Carolina. In 2000, Dr. William F. Alleyne II of Rock Hill, South Carolina saw Plaintiff. Dr. Alleyne found the Plaintiff to be suffering from asbestosis, pleural disease and COPD. On January 17, 2001, Dr. Phillip C. Goodman examined Plaintiff and found that Plaintiff was suffering from severe asbestosis and pleural disease.
19. Plaintiff's is suffering a moderate to severe impairment to his breathing. Plaintiff's exposure to asbestos caused or significantly contributed to his severe breathing impairment and resulting asbestosis.
20. Defendants did not appeal from the deputy commissioner's award for damage to each lung and pleurae.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted asbestosis and pleural disease as a result of his employment with Defendant-Employer. These are occupational diseases under the Act. N.C. Gen. Stat. § 97-53(24).
2. Plaintiff was employed by Carolina Industrial Insulation from 1964 to 1974. N.C. Gen. Stat. § 97-2(2), (3). Plaintiff's last injurious exposure to the hazards of asbestos in excess of 30 working days, or parts thereof, within seven consecutive months, occurred in 1971 while in the employ of Carolina Industrial Insulation; therefore, Carolina Industrial Insulation is the responsible employer. N.C. Gen. Stat. § 97-57.
3. Plaintiff is entitled to compensation for permanent injury to his lungs and pleurae, which are important internal organs or body parts. N.C. Gen. Stat. § 97-31(24).
4. Plaintiff is entitled to compensation for all medical treatment resulting from his contraction of a compensable occupational disease to the extent that such treatment is designed to effect a cure, give relief or lessen this period of disability. N.C. Gen. Stat. §§ 97-25; 97-25.1.
5. Carrier ACE-USA was on the risk at the time of Plaintiff's last injurious exposure to asbestos and is therefore liable for payment of compensation due Plaintiff pursuant to the Workers Compensation Act. N.C. Gen. Stat. § 97-57.
6. Insurance policies are construed like any other contract except that the construction and interpretation of the contract must be done in a light most favorable to the insured. North Carolina law mandates that in interpreting the construction of insurance contracts, "any ambiguity in the meaning of a particular provision will be resolved in favor of the insured and against the insurance company." Woods v. Nationwide MutualInsurance Co., 295 N.C. 500, 246 S.E.2d 773 (1978); Grant v.Emmco Insurance Co., 295 N.C. 39, 243 S.E.2d 894 (1978);Wachovia Bank Trust Co. v. Westchester Fire Insurance Co.,276 N.C. 348, 172 S.E.2d 518 (1970); Carlson v. Old RepublicIns. Co., 160 N.C. App. 399, 585 S.E.2d 497 (2003). Therefore, when there is ambiguity in the meaning of terms of an insurance contract, it is to be construed in favor of the insured. Since no policy has been produced, there is some disagreement as to the terms of the policy. Thus, in accordance with North Carolina law, the policy must be interpreted in favor of the insured. Since workers' compensation policies are purchased for the protection of and benefit of employees, ambiguous, or in this case missing, portions of the workers' compensation policy must be interpreted and construed in favor of the employee.
South Carolina law is no different from North Carolina law in terms of interpreting insurance policies. Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer. Diamond State Ins. Co. v. Homestead Indus., Inc.,318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995). Therefore, without evidence of the terms of the policy, the policy provisions must be construed in favor of the insured and in favor of coverage.
7. There is no evidence that the ACE-USA policy only covered Carolina Industrial Insulation employees who were injured in South Carolina. The Commission cannot create policy provisions that do not exist. It cannot be assumed that the policy had restrictive provisions; it must be proven. The initial burden is on the insured to establish coverage for a claim. In the case at hand, Plaintiff has proven that he was an employee of Carolina Industrial Insulation during the time period when ACE-USA provided workers' compensation coverage. The burden then shifts to the defendant-carrier to establish that an exclusion applied to the claim and that employees of Carolina Industrial Insulation were not insured under its policy while working in North Carolina. In the case at hand, ACE-USA argues that an exclusion existed in that the coverage was only applicable to South Carolina injuries. ACE-USA has offered no evidence to support this argument. Therefore, ACE-USA has not met its burden.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay Plaintiff for permanent injury or damage to each lung, including its pleura the sum of $20,000, which amounts to a total of $40,000.
2. Defendants shall pay all medical expenses incurred or to be incurred in the future by Plaintiff resulting from his compensable occupational disease when bills have been submitted according to Industrial Commission procedures.
3. A reasonable attorney fee in the amount of twenty-five percent (25%) of the compensation approved and awarded for Plaintiff is approved and allowed for Plaintiff's counsel. The attorney's fee shall be deducted from the compensation due Plaintiff. The attorney's fee shall be paid directly to Plaintiff's attorney.
4. Defendants shall pay the costs of this action.
This the 23 day of November, 2005.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ LAURA K. MAVRETIC COMMISSIONER