**MID–CENTURY INSURANCE COM-PANY, a California corporation, Plaintiff–Appellee,**

v.

**Alvino ROBLES, Defendant–Appellant.**

**No. 11CA0461.**

Colorado Court of Appeals, Div. I.

Dec. 8, 2011.

White and Steele, P.C., John Lebsack, John Craver, Robin Bowers, Denver, Colorado, for Plaintiff–Appellee.

Robert J. Anderson, P.C., Robert J. Anderson, Richard E. Wootton, Colorado Springs, Colorado, for Defendant–Appellant.

Opinion by Judge BOORAS.

Defendant, Alvino Robles (the claimant), appeals from the trial court's summary declaratory judgment determining that there was no coverage for an accident under an automobile insurance policy issued by plaintiff, Mid–Century Insurance Company (Mid–Century).[1] We affirm.

The following facts are undisputed. On January 21, 2008, an automobile accident occurred between the claimant and the tortfeasor. At the time of the accident, the tortfeasor was living with his parents and was driving his father's Oldsmobile, which was insured by Farmers Insurance Exchange (Farmers). The tortfeasor's parents were the named insureds on the Farmers policy. The tortfeasor also owned a Ford Explorer, which was insured by Mid–Century. The tortfeasor and his father were the named insureds on the Mid–Century policy. The tortfeasor was driving his father's Oldsmobile at the time of the accident because his father had borrowed the Explorer to transport paintings that would not fit into the Oldsmobile.

The claimant sustained injuries in the accident and, accordingly, filed a lawsuit against the tortfeasor. The claimant and the tortfeasor reached a partial settlement, and the claimant received $100,000 from Farmers pursuant to the policy limits.

Seeking a declaration regarding coverage, Mid–Century initiated this action for declaratory relief. The claimant filed a cross-motion for declaratory relief, and both parties filed motions for summary judgment. The trial court granted Mid–Century's motion for summary judgment, concluding that the Mid–Century policy did not provide coverage for the accident because the Oldsmobile did not qualify as an "insured car" under the policy and that the "regular use" or "drive other car" exclusion did not violate public policy. The trial court also excluded coverage under the anti-stacking provision of the Mid–Century policy. This appeal followed.

## II. Standard of Review

■ Under C.R.C.P. 56(a), a party seeking a declaratory judgment may move for summary judgment. Because the interpretation of an insurance contract is a question of law for the court, where neither party disputes the authenticity of the documents necessary to the court's determination or the facts underlying it, summary judgment may properly be entered in favor of the moving party. *Horace Mann Ins. Co. v. Peters*, 948 P.2d 80, 84 (Colo.App.1997). We review a grant of summary judgment de novo. *A.C. Excavating v. Yacht Club II Homeowners Ass'n*, 114 P.3d 862, 865 (Colo.2005).

■ As with any contract, we construe an insurance policy to give effect to the intent of the parties. *Farmers Ins. Exch. v. Anderson*, 260 P.3d 68, 72 (Colo.App.2010). Whenever possible, this intent should be ascertained from the plain language of the policy alone. *Id.*

■ In addition, courts should read the provisions of the policy as a whole, rather than reading them in isolation. Courts may neither add provisions to extend coverage beyond that contracted for, nor delete them to limit coverage. However, because of the unique nature of insurance contracts and the relationship between the insurer and the insured, courts construe ambiguous provisions against the insurer and in favor of providing

---

1. In the caption in the opening brief, the tortfeasor and his father are listed as defendants-appellants. However, they are not listed as defendants-appellants on the notice of appeal and did not file a separate notice of appeal.

coverage to the insured. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo.2003).

For the same reasons, coverage exclusions are construed against the insurer. *Worsham Constr. Co. v. Reliance Ins. Co.*, 687 P.2d 988, 990 (Colo.App.1984). Such clauses must be drafted in clear and specific language. *Am. Family Mut. Ins. Co. v. Johnson*, 816 P.2d 952, 953 (Colo.1991) (*Johnson*). "To benefit from an exclusionary provision in a particular contract of insurance the insurer must establish that the exemption claimed applies in the particular case and that the exclusions are not subject to any other reasonable interpretations." *Id.*

### III. Analysis

The claimant contends that the trial court misinterpreted the policy exclusion. We disagree.

Here, the Mid–Century policy explicitly covers the Explorer and states that "[Mid–Century] will pay **damages** for which any **insured person** is legally liable because of **bodily injury** to any person and **property damage** arising out of the ownership, maintenance or use of a **private passenger car, a utility car,** or **utility trailer.**"[2] An exclusion in the policy, however, states that "[t]his coverage does not apply to: ... **Bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle other than **your insured car,** which is owned by or furnished or available for regular use by you or a **family member.**"

We note that a "regular use" or "drive other car" provision, such as that here, generally allows coverage for an insured for the occasional or infrequent use of an automobile, other than his or her own, without requiring payment of additional premiums. *Cruz v. Farmers Ins. Exch.*, 12 P.3d 307, 309 (Colo.App.2000). It excludes coverage, however, for automobiles regularly used by an insured that are not listed under the policy or for which a premium has not been paid. *Id.* "Excluding coverage for a family member's use of [a] car that he or she or another family member owns and is separately insured 'is not uncommon,' is 'legally sound and [is] supported by policy.'" *Cassilli v. Soussou*, 408 N.J.Super. 147, 973 A.2d 986, 993 (N.J.Super.Ct.App.Div.2009) (quoting *Webb v. AAA Mid–Atlantic Ins. Group*, 348 F.Supp.2d 324, 330 (D.N.J.2004)).

The claimant argues that this exclusion does not apply here because the tortfeasor did not regularly use the Oldsmobile. We conclude that the claimant misinterprets the policy language.

Here, the policy term contains two independent clauses, excluding coverage for two categories of vehicles: those "owned by" the specified category of persons and those "furnished or available for regular use by" the category of persons. *See Cruz*, 12 P.3d at 310. Although the phrase as written does not contain commas setting off those clauses, the last five words, "you or a family member," apply to both clauses. *See id.* Thus, we read the phrase to mean "any vehicle owned by you or a family member, or any vehicle furnished or available for regular use by you or a family member." *See id.*

The policy defines "you" and "your" to mean "the 'named insured' shown in the Declarations and spouse if a resident of the same household." The tortfeasor and his father are the named insureds on the Mid–Century policy. Therefore, as relevant here, this exclusion clause bars liability which may arise out of the use of any vehicle owned by the tortfeasor *or* his father, or any vehicle furnished or available for regular use by the tortfeasor *or* his father, except for the insured car. Contrary to the claimant's suggestion, the term "you" in the exclusion is not limited to the tortfeasor, the driver of the Oldsmobile at the time of the accident. Accordingly, because the tortfeasor's father owned, as well as regularly used, the Oldsmobile involved in the accident which caused the claimant's injuries, the exclusion applies and bars recovery under the Mid–Century policy. *See Hill v. Farmers Ins. Exch.*, 888 P.2d 138, 141 (Utah

---

2. The terms appearing in bold type in this opinion are written in bold type in the policy and have specific definitions supplied by the policy.

Ct.App.1994). The exclusion clearly and unmistakably communicates to the insured the specific circumstances under which otherwise expected coverage will not be provided. *See Johnson,* 816 P.2d at 953.

■ Thus, coverage under the Mid–Century policy depends on whether the Oldsmobile qualifies as an "insured car," as defined by the policy.

The definitions section of the policy, as relevant here, defines "[y]our insured car" as follows:

1. The vehicle described in the Declarations of this policy or any **private passenger car** or **utility car** with which you replace it. You must advise us within 30 days of any change of **private passenger car** or **utility car.** If your policy term ends more than 30 days after the change, you can advise us any time before the end of that term.

. . . .

4. Any **private passenger car, utility car** or **utility trailer** not owned by you or a **family member** while being temporarily used as a substitute for any other vehicle described in this definition because of its withdrawal from normal use due to breakdown, repair, servicing, loss or destruction.

The parties agree that the only way that the tortfeasor could have been driving an "insured car" is if the Oldsmobile fell under the first clause of the definition and it was deemed a replacement vehicle. Although the claimant concedes that the fourth clause does not apply here, it informs our interpretation of what constitutes a replacement vehicle under the first clause.

The Mid–Century policy does not define "replace" or "replacement." In the absence of any indication that the word "replace" is intended to have some special meaning peculiar to the insurance industry, we will construe it in its commonly used sense. *Allstate Ins. Co. v. Parfrey,* 830 P.2d 905, 912 (Colo. 1992) (citing *Nationwide Mut. Ins. Co. v. Mast,* 153 A.2d 893, 895 (Del.Super.Ct.1959) (*Mast*), and *Brescoll v. Nationwide Mut. Ins. Co.,* 116 Ohio App. 537, 189 N.E.2d 173, 175 (1961)) (*Parfrey*). The commonly understood meaning of "replace" is to supplant something with an equivalent or substitute. *Id.* (citing *Black's Law Dictionary* 1299 (6th ed. 1990)); *see also Webster's Third New International Dictionary* 1925 (2002) (defining "replace" as "to take the place of: serve as a substitute for or successor of"). In *Parfrey,* the court held that the term "replacement policy" in section 10–4–609(3), C.R.S.2011, refers to a policy issued to "replace a prior policy that has been *lost or destroyed.*" *Parfrey,* 830 P.2d at 912 (emphasis added).

As the common understanding of "replace" implies taking the place of something that is now lost, gone, or destroyed, *see id.,* we conclude that a "replacement" under the first clause of the policy here occurs when the vehicle described in the policy has been disposed of (for example, by transfer of ownership) or, if the insured retains ownership of the described vehicle, it is physically or legally inoperable, and another vehicle of equivalent use is substituted. Furthermore, the contextual use of the term "replace," as used in the policy, connotes a supplanting or superseding of the designated car as opposed to a temporary substitution for it, which is addressed by the fourth clause. *See Gov't Employees Ins. Co. v. Reilly,* 51 Md.App. 208, 441 A.2d 1139, 1142 (Md.Ct. Spec.App.1982). In addition, the thirty-day notification requirement in the first clause contemplates that the replacement vehicle is more than simply a temporary swap. In so holding, we reject the claimant's suggestion that a replacement vehicle includes a mere gratuitous, temporary exchange of vehicles belonging to the insured and a relative or friend. *See Grant v. Emmco Ins. Co.,* 295 N.C. 39, 243 S.E.2d 894, 899 (1978).

Other jurisdictions that have interpreted substantially similar replacement vehicle provisions have uniformly held that "replacement" occurs when disposition has been made of a vehicle described in the policy (i.e., the vehicle is no longer operable or owned by the insured) and a new vehicle of equivalent use is substituted. *See, e.g., Mast,* 153 A.2d at 895; *Am. Freedom Ins. Co. v. Smith,* 347 Ill.App.3d 1, 282 Ill.Dec. 548, 806 N.E.2d 1136, 1140 (2004); *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 670 (Ind.1997); *Bjork v. Dairyland Ins. Co.,* 174 N.W.2d 379,

383 (Iowa 1970); *Ponds v. Hertz Corp.*, 37 Kan.App.2d 882, 158 P.3d 369, 373 (2007); *State Farm Mut. Auto. Ins. Co. v. Shaffer*, 250 N.C. 45, 108 S.E.2d 49, 54 (1959).

We find the reasoning of these cases persuasive and dispositive of this appeal. Here, the Mid–Century policy is not ambiguous when it uses the word "replace." It is clear the parties here intended coverage of only one vehicle at a time. At the time of the accident, the tortfeasor owned the Explorer, and it was operable. There is no evidence in the record that the Oldsmobile was intended to replace the Explorer; rather, the tortfeasor and his father were merely swapping cars for the afternoon so that his father could move some paintings that would not fit into the Oldsmobile. Therefore, coverage of the Explorer, which was operable and available for the tortfeasor's use, and coverage of the Oldsmobile, which was being used by the tortfeasor, would be contrary to one-car coverage and the unambiguous language of the policy. In sum, the Oldsmobile did not serve as a replacement vehicle under the clear meaning of the policy language. Thus, the trial court did not err by granting Mid–Century's motion for summary judgment.

Because the exclusion in the Mid–Century policy provides that there is no coverage in the first instance, we need not address the applicability of the anti-stacking provision. The anti-stacking provision merely provides for a liability limit of the highest amount set forth in a single policy rather than combining the liability amounts of the applicable policies; however, it does not create coverage in the first instance.

The judgment is affirmed.

Judge TAUBMAN and Judge ROMÁN concur.