The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
July 3, 2025

## 2025COA63

**No. 24CA0848, *Baker v. Safadi-Chamberlain* — Water and Irrigation — Rights-of-Way and Ditches — Extent of Right-of-Way**

In this dispute over an irrigation ditch, a division of the court of appeals considers whether section 37-86-103, C.R.S. 2024, gives the beneficiary of a ditch right-of-way the unfettered right to pipe the ditch. Relying on the plain language of the statute, the division concludes that section 37-86-103 provides a right to pipe a ditch only when doing so would improve the ditch's efficiency. Accordingly, the division affirms the district court's judgment, albeit on a slightly different ground than that relied on by the district court.

COLORADO COURT OF APPEALS                                        **2025COA63**

Court of Appeals No. 24CA0848
Larimer County District Court No. 23CV30216
Honorable Stephen J. Jouard, Judge

Dale Baker,

Plaintiff-Appellant,

v.

Farida Safadi-Chamberlain,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE YUN
Tow and Sullivan, JJ., concur

Announced July 3, 2025

Fischer, Brown, Bartlett, Larsen & Irby, P.C., Todd W. Rogers, Whitney Phillips
Coulter, Fort Collins, Colorado, for Plaintiff-Appellant

Fischer Law Group, P.C., Erik G. Fischer, Ashleigh Bravo, Fort Collins,
Colorado, for Defendant-Appellee

¶ 1    In Colorado, a person who owns a water right is "entitled to a right-of-way through the lands which lie between the point of diversion and point of use or proposed use for the purpose of transporting water for beneficial use in accordance with said water right." § 37-86-102, C.R.S. 2024; *see* Colo. Const. art. XVI, § 7.

¶ 2    Section 37-86-103, C.R.S. 2024, sets forth the extent of this right-of-way.  Before 2019, this statute — largely unchanged from a statute enacted in 1861 — provided that "[s]uch right-of-way shall extend only to a ditch, dike, cutting, pipeline, or other structure sufficient for the purpose required." § 37-86-103, C.R.S. 2018; *see* An Act to Protect and Regulate the Irrigation of Lands, sec. 3, 1861 Colo. Terr. Sess. Laws 67.  But in 2019 the General Assembly added new language to the statute, including that "a ditch right-of-way includes the right to . . . replace the ditch and appurtenant structures, to improve the efficiency of the ditch, *including by lining or piping the ditch,* and to enter onto the burdened property for such purposes." § 37-86-103, C.R.S. 2024 (emphasis added); *see* Ch. 54, sec. 1, § 37-86-103, 2019 Colo. Sess. Laws 190.

¶ 3    This case involves the interpretation of the 2019 amendment. Plaintiff, Dale Baker, filed a declaratory judgment action seeking to pipe a ditch running across property owned by defendant, Farida Safadi-Chamberlain, under the amended statute. After a bench trial, the district court entered judgment in favor of Safadi-Chamberlain, interpreting the amendment to require that "piping of the ditch is reasonable and necessary related to the operation of the ditch." Baker appeals, contending that the court misinterpreted the statute by imposing "unnecessary evidentiary findings."

¶ 4    As a matter of first impression, we conclude that the amendment to section 37-86-103 grants the right to pipe a ditch only when doing so would improve the ditch's efficiency. Because the district court's factual findings also support the judgment under this interpretation of the statute, we affirm, albeit on a slightly different ground than that relied on by the district court.

## I.    Background

¶ 5    Baker, Safadi-Chamberlain, and several of their neighbors own water rights through the North Poudre Irrigation Company. The water is delivered by a private, unincorporated, lateral, open ditch

2

that runs across Safadi-Chamberlain's property and eventually, after crossing three other neighbors' properties, terminates downstream on Baker's property.

¶ 6    In 2019, the water right owners decided to pipe the portion of the ditch that runs from North Poudre Irrigation Company's canal to just before Safadi-Chamberlain's property. That portion of the ditch is shown in a dashed blue line below, while the portion of the ditch that remained unpiped is shown in a solid red line.



The Ditch After the 2019 Piping Project

3

Safadi-Chamberlain voted in favor of and contributed financially to the 2019 piping project. Before piping the ditch, it took over five hours for water released from the irrigation company's canal to reach Safadi-Chamberlain's property; after piping the ditch, it takes around thirty minutes.

¶ 7        In 2022, Baker and at least one neighbor[1] decided that the remainder of the ditch should be piped as well. But Safadi-Chamberlain opposed the idea and refused to allow them to pipe the portion of the ditch on her property. Baker thus filed suit in district court, seeking a declaration that he was statutorily entitled to pipe the segment of the ditch on Safadi-Chamberlain's property under section 37-86-103. And, though he did not include it as a claim for relief in his complaint, Baker argued at trial and continues to assert on appeal that Safadi-Chamberlain should be forced to contribute one-fifth of the total cost of piping the ditch.

¶ 8        The district court held a one-day bench trial. Baker testified that he wanted to pipe the ditch to "maintain the efficiency" from

---

[1] One neighbor testified at trial in support of piping the remainder of the ditch. But the positions of the other neighbors are not in the record, as they did not participate in the lawsuit.

the 2019 piping project. His expert witness testified that having the entire ditch piped from the canal to Baker's property would generate "five to seven [pounds per square inch]" of pressure, "which is sufficient enough to drive the water . . . from the pipe up above ground level for flood irrigation," thereby avoiding the need to "operate a pump and set check dams or siphon tubes or various other means that you use to get[] water out of a pipe." But leaving the segment of the ditch on Safadi-Chamberlain's property unpiped would "los[e] whatever pressure you might have built in that pipeline" up to that point. The expert also explained that piping a ditch generally "improve[s] efficiency for water loss, whether it's seepage or evaporation from an open ditch," and "reduce[s] the waste that comes out of the end of an open canal." But he conceded that he "did not do a seepage and loss study" on the ditch.

¶9 On the other hand, Safadi-Chamberlain's expert witness testified that he tested the ditch and found a "high percent[age] of clay soil . . . along the ditch from [Safadi-Chamberlain's] property to the north all the way to the south." He explained that this made any water loss to seepage "negligible." He concluded that "the

5

amount of water that will be delivered by the pipe . . . probably will be the same or less" than the amount delivered from the open ditch and that "[t]here will be no pressure." Safadi-Chamberlain testified that the costs associated with piping the ditch would far exceed any potential benefits; that the valves necessary to access the piped water would harm the aesthetics of her property; and that piping the ditch would disrupt her ability to use flood irrigation, which she believed was the most effective and least labor-intensive method of irrigating her property.

¶ 10    The district court interpreted section 37-86-103 as requiring "the court to determine whether the right-of-way is sufficient for the purposes required of the ditch" and whether "piping of the ditch is reasonable and necessary related to the operation of the ditch." Based on this interpretation, the court found that "the open lateral ditch is sufficient to meet the needs for delivery of the water right[s] to the parties' respective properties" and that "piping of the remaining portion of the lateral ditch is not reasonable and necessary and would not make any appreciable improvement in the amount or quality of the water actually delivered either to the Baker

6

or Safadi-Chamberlain properties." Accordingly, the court entered judgment in favor of Safadi-Chamberlain.

## II. Analysis

¶ 11 Baker explicitly disavows challenging the district court's factual findings. Instead, he contends that the court misinterpreted section 37-86-103 and imposed "unnecessary evidentiary findings." From this, we understand his argument to be that the amendment to section 37-86-103 granted him an unfettered right to pipe the ditch. We disagree.

### A. Standard of Review and Governing Statute

¶ 12 "We review a judgment following a bench trial as a mixed question of fact and law." *Premier Members Fed. Credit Union v. Block*, 2013 COA 128, ¶ 27. "It is the province of the trial court to assess the reliability of the evidence and credibility of witnesses," *Lawry v. Palm*, 192 P.3d 550, 560 (Colo. App. 2008), and we will disturb the court's factual findings "only if they are clearly erroneous and not supported by the record," *id.* at 558. But "we review the court's conclusions of law de novo." *Premier Members*, ¶ 27.

¶ 13     We also review a district court's interpretation of a statute de

novo. *Bodelson v. City of Littleton*, 36 P.3d 214, 216 (Colo. App.

2001). In interpreting a statute, our primary purpose is to give

effect to the General Assembly's intent. *People v. Diaz*, 2015 CO 28,

¶ 12. "We construe the statute as a whole, in an effort to give

consistent, harmonious, and sensible effect to all its parts, and we

read the words and phrases in context and construe them

according to the rules of grammar and common usage." *Id.* We

avoid interpretations that would render any words or phrases

superfluous. *Dep't of Revenue v. Agilent Techs., Inc.*, 2019 CO 41,

¶ 16. If the statute's language is clear, we must apply it as written

and need look no further. *Oakwood Holdings, LLC v. Mortg. Invs.*

*Enters. LLC*, 2018 CO 12, ¶ 12.

¶ 14     Section 37-86-103, in its entirety, provides as follows:

> [A water] right-of-way shall extend only to a
> ditch, dike, cutting, pipeline, or other
> structure sufficient for the purpose required.
> Unless inconsistent with the terms upon which
> the right-of-way was created, and not to be
> construed as a limit on any other rights in a
> ditch or ditch right-of-way that have been
> created or arisen by law, a ditch right-of-way
> includes the right to construct, operate, clean,
> maintain, repair, and replace the ditch and
> appurtenant structures, to improve the

efficiency of the ditch, including by lining or piping the ditch, and to enter onto the burdened property for such purposes, with access to the ditch and ditch banks, as the exigencies then existing may require, for all reasonable and necessary purposes related to the ditch.

The 2019 amendment added the second sentence to the statute. *See* 2019 Colo. Sess. Laws at 190.

## B. Section 37-86-103 Grants the Right to Pipe a Ditch Only if Doing So Improves Its Efficiency

¶ 15    Baker interprets section 37-86-103 as granting the beneficiaries of a ditch right-of-way an unfettered right to pipe the ditch. To reach this conclusion, he interprets the qualifying clause "for all reasonable and necessary purposes related to the ditch" as limiting only the right of entry onto the burdened property. He thus reads the statute as conferring the following three separate rights:

(1)    "to construct, operate, clean, maintain, repair, and replace the ditch and appurtenant structures";

(2)    "to improve the efficiency of the ditch, including by lining or piping the ditch"; and

(3)    "to enter onto the burdened property for such purposes, with access to the ditch and ditch banks, as the

9

exigencies then existing may require, *for all reasonable and necessary purposes related to the ditch.*"

§ 37-86-103 (emphasis added).

¶ 16    However, the district court interpreted section 37-86-103 as requiring determinations that "the right-of-way is sufficient for the purposes required of the ditch" and "that the piping of the ditch is reasonable and necessary related to the operation of the ditch." We rely on a different part of the statute — specifically, the clause describing the second right listed above — to conclude that the statute does not grant an unfettered right to pipe a ditch. Accordingly, we affirm on a different ground. *See Taylor v. Taylor*, 2016 COA 100, ¶ 31 (appellate court may affirm on any basis supported by the record).

¶ 17    We begin by examining the second clause — the right "to improve the efficiency of the ditch, including by lining or piping the ditch" — as it is the only clause that references the right to pipe a ditch. But this clause is limited by its own terms to actions that improve the efficiency of the ditch. Thus, it does not grant an unfettered right to pipe a ditch.

¶ 18    The first clause — the right "to construct, operate, clean, maintain, repair, and replace the ditch and appurtenant structures" — does not reference the right to pipe the ditch. However, to the extent that Baker argues the phrase "to . . . replace the ditch and appurtenant structures" includes an unfettered right to pipe the ditch, we conclude that such an interpretation of the statute is unreasonable.

¶ 19    "The commonly understood meaning of 'replace' is to supplant something with an equivalent or substitute." *Mid-Century Ins. Co. v. Robles*, 271 P.3d 592, 596 (Colo. App. 2011) (citing *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905, 912 (Colo. 1992)); *see also* Merriam-Webster Dictionary, https://perma.cc/GP2V-MQAZ (defining "replace" as "to take the place of especially as a substitute or successor" and "to put something new in the place of"). Read alone, "replacing" a ditch could be construed to include piping it. But we do not read terms in isolation; instead, we "construe the statute as a whole, in an effort to give consistent, harmonious, and sensible effect to all its parts, and we read the words and phrases in context." *Diaz*, ¶ 12; § 2-4-101, C.R.S. 2024. For two reasons, we

conclude that the General Assembly did not intend to use "replace" so broadly.

¶ 20     First, construing the word "replace" to allow piping the ditch would give the word a meaning unrelated to that of the surrounding terms.  *See Coloradans for a Better Future v. Campaign Integrity Watchdog,* 2018 CO 6, ¶ 37 ("It is a familiar principle of statutory construction that words grouped in a list should be given related meaning." (quoting *Third Nat'l Bank in Nashville v. Impac Ltd., Inc.,* 432 U.S. 312, 322 & n.16 (1977))).  "Replace" is immediately preceded by the terms "clean," "maintain," and "repair."  Each of these words connotes an effort to, as much as possible, keep the ditch in, or restore the ditch to, its original condition; none of them suggest fundamentally altering the ditch itself.  *See* Merriam-Webster Dictionary, https://perma.cc/YTP6-Z4NY (defining "clean" as "to rid of dirt, impurities, or extraneous matter"); Merriam-Webster Dictionary, https://perma.cc/529N-NMY6 (defining "maintain" as "to keep *in an existing state* (as of repair, efficiency, or validity)" or "*preserve* from failure or decline") (emphases added); Merriam-Webster Dictionary, https://perma.cc/8TKT-UBEG (defining "repair" as "to *restore* by

12

replacing a part or putting together what is torn or broken" or "fix") (emphasis added). Viewed in this context, the term "replace" is best read narrowly to have a similar meaning — supplanting an existing ditch with a *new ditch. See Robles*, 271 P.3d at 596; *cf. Coloradans for a Better Future*, ¶¶ 35-38 (construing the term "gift" narrowly to mean a monetary gift based, in part, on its inclusion among words that refer to money).

¶ 21    Second, and more importantly, if we were to construe the term "replace" broadly enough to include piping a ditch, it would render the second clause — the right "to improve the efficiency of the ditch, including by . . . piping the ditch" — superfluous. § 37-86-103. That clause explicitly mentions piping the ditch and allows doing so only when it would improve the efficiency of the ditch. If we were to interpret the term "replace" in the first clause to include piping, it would allow a beneficiary of the ditch right-of-way to pipe the ditch for any reason, rendering the second clause meaningless. We will not adopt such a construction. *See Agilent Techs., Inc.*, ¶ 16; *Coloradans for a Better Future*, ¶ 39; *People v. Lente*, 2017 CO 74, ¶ 21 ("Were we to construe one term to swallow the other, or to be

its equal, then the other term would be superfluous. We avoid such constructions.").

¶ 22 In sum, nothing in the plain language of section 37-86-103 grants the beneficiary of a ditch right-of-way the unfettered right to pipe the ditch; they must show that piping would improve the efficiency of the ditch.

## C. Application

¶ 23 The district court found that the "evidence did not establish that piping of the remaining open ditch to the Baker property would increase the efficiency or materially impact delivery of water to the properties." Though Baker disagrees with this finding, he does not contest it on appeal. In any event, the record supports the finding:

- Baker's expert witness conceded that he did not measure how much water the ditch loses to seepage or evaporation, did not do any soil testing, and did not have any estimates about how much additional water would be available to Baker if the ditch was piped.

- Safadi-Chamberlain's expert witness testified that, due to the "high percent[age] of clay soil" in the ditch, any water loss to seepage was "negligible." He also explained that

14

the twelve-inch pipes Baker planned on installing would be "very small compar[ed] to the size of the ditch" and that the "area of water flowing" through the pipe "will be a lot less than [twelve]-inch[es]" because of air, sediment, and other debris. Therefore, he concluded that "the amount of water that will be delivered by the pipe . . . probably will be the same or less" and that piping the ditch would not create any pressure.

¶ 24 We will not disturb the district court's factual findings unless "they are clearly erroneous and not supported by the record." *Lawry*, 192 P.3d at 558. Because the record supports the district court's finding that piping the ditch would not improve its efficiency, we conclude that the district court correctly entered judgment in favor of Safadi-Chamberlain.

### III. Appellate Attorney Fees

¶ 25 Safadi-Chamberlain requests her appellate attorney fees under C.A.R. 38(b) on the grounds that Baker's appeal was frivolous. An appeal may be frivolous as filed or as argued. *Calvert v. Mayberry*, 2019 CO 23, ¶ 45. An appeal "is frivolous as filed when there are no legitimately appealable issues because the judgment below 'was

15

so plainly correct and the legal authority contrary to the appellant's position so clear.'" *Id.* (quoting *Castillo v. Koppes-Conway*, 148 P.3d 289, 292 (Colo. App. 2006)). If there are legitimately appealable issues, then "an appeal may still be frivolous as argued if the appellant 'fail[s] to set forth . . . a coherent assertion of error, supported by legal authority.'" *Id.* (quoting *Castillo*, 148 P.3d at 292).

¶ 26　Though we have ruled against Baker, we do not view his appeal as frivolous, either as filed or as argued, such that a fee award is appropriate, so we deny the request. *See Mission Denver Co. v. Pierson*, 674 P.2d 363, 365 (Colo. 1984) ("Standards for determining whether an appeal is frivolous should be directed toward penalizing egregious conduct without deterring a lawyer from vigorously asserting his client's rights."); *see also In re Marriage of Boettcher*, 2018 COA 34, ¶ 38 ("Fees should be awarded only in clear and unequivocal cases . . . ."), *aff'd*, 2019 CO 81.

IV.　Disposition

¶ 27　The judgment is affirmed.

JUDGE TOW and JUDGE SULLIVAN concur.